IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAN HOWARD, PRO-SE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 04CV11900NG |
| | ) |
| HD VEST FINANCIAL SERVICES, | ) |
| STUART K. JUCKETT, | ) |
| NATIONAL ASSOCIATION OF | ) |
| SECURITIES DEALERS, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NASD, INC. MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(6) AND 12(h)(3)

Defendant National Association of Securities Dealers, Inc. ("NASD") hereby submits this Memorandum in Support of its Motion to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

I.   SUMMARY OF ARGUMENT

This is a largely disjointed complaint by plaintiff Daniel Howard ("Howard") against NASD, a securities regulator, Stuart Juckett, a person who complained in 1996 about Howard's conduct regarding his elderly stepfather's securities account, and H.D. Vest Financial Services, a securities firm with whom Howard apparently sought employment in August 2004, while Howard was still serving a two-year suspension from the securities industry.

Howard's complaint against NASD must be dismissed for three separate reasons: First, Howard's claims against NASD mostly arise from an NASD disciplinary proceeding that resulted in a $25,000.00 fine and a two-year suspension. Having litigated

unsuccessfully all the way to the U.S. Court of Appeals for the First Circuit, Howard is barred by *res judicata* from attempting to relitigate his disciplinary action in this case.

Howard's claims are also barred because there is no private right of action against NASD for its regulatory acts and omissions under federal law, and because NASD is absolutely immune from claims arising from NASD's statutory rule in regulating the securities industry and protecting investors. Howard's allegations against NASD arise from NASD's prosecution of him in the 1999 disciplinary proceeding, and from NASD's maintenance of Howard's securities registration information on a database that NASD is required by federal law to maintain. As will be explained in more detail below, each of these activities is undertaken pursuant to Section 15A of the Securities Exchange Act of 1934, 15 U.S.C. § 78o-3. Howard's claims are therefore barred by the absence of a private right of action in this statute, and by immunity, and must be dismissed.

## II.  FACTUAL BACKGROUND

### A.  The Complaint

The Complaint states at ¶ 1 (but nowhere else in the Complaint) that it asserts against NASD unspecified violations of the Massachusetts Uniform Securities Act, M.G.L. c 110A; and 950 CMR 10.00, *et seq*. The complaint does not reveal what provisions or regulations NASD allegedly violated, or why any alleged violations of state law are not preempted by 15 U.S.C. § 78o-3, the Maloney Amendment to the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq*., which gives NASD the authority to perform the regulatory functions that Howard disputes in this litigation. The complaint also alleges an unspecified violation of an unspecified law, for NASD permitting a former customer, defendant Juckett to "stalk" Howard using NASD's Central

Registration Depository database, a database for securities registration information that NASD is required by federal law to maintain and make available to the public. 15 U.S.C. § 78o-3(i).

Each of Howard's allegations against NASD arises directly from NASD's statutory role in the federal system of securities regulation, and is barred by *res judicata*, the absence of a private right of action, and absolute immunity.

### B. NASD Role in Securities Industry Regulation

NASD is a private not-for-profit Delaware corporation and a self-regulatory organization ("SRO") registered with the SEC as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. §§ 78o-3, *et seq.*, amending the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78a, *et seq*. As a self-regulatory organization, NASD is part of the Exchange Act's highly interrelated and fully comprehensive mechanism for regulating the securities markets. *Swirsky v. NASD, Inc.*, 124 F.3d 59, 61 (1st Cir. 1997). In this regard, NASD acts under the substantial supervision of the United States Securities and Exchange Commission ("SEC"). For instance, with few exceptions not relevant here, the SEC must approve all NASD rules, policies, practices, and interpretations before they are implemented. 15 U.S.C. § 78s(b). *Swirsky*, 124 F.3d at 62. And, at any time, the Commission may "abrogate, add to, [or] delete from" the rules of NASD. 15 U.S.C. § 78s(c), *Swirsky, id.*

Through its subsidiary NASD Regulation, Inc. ("NASDR"), NASD is charged with "conducting investigations and commencing disciplinary proceedings against NASD member firms and their associated member representatives relating to compliance with the federal securities laws and regulations." *D.L. Cromwell Inv., Inc. v. NASD*

3

*Regulation, Inc.*, 279 F.3d 155, 161 (2d Cir.), *cert denied*, 537 U.S. 1028 (2002) (*quoting Datek Sec. Corp. v. NASD, Inc.*, 875 F. Supp. 230, 232 (S.D.N.Y. 1995)). NASD is authorized "to impose a number of sanctions, including censure, fines, suspension, or prohibition from association with member firms." *Swirsky v. NASD, Inc.*, 124 F.3d 59, 60 (1st Cir. 1997).

The NASD Code of Procedure, which has been approved by the SEC (SEC Rel. No. 34-38908, 62 FR 43571 (Aug. 14, 1997)), governs NASD disciplinary proceedings against securities firms and their representatives. The entire Code is contained in the NASD Manual, a CCH publication. Under Rule 9231, disciplinary cases are tried before a Hearing Panel composed of a Hearing Officer and two additional Hearing Panelists. Any sanctions must be "supported by written statements specifying the activity that caused the violation, the specific provision or rule violated, and the reason for the sanction imposed." *Swirsky, id.*

The Exchange Act provides for a "three-tiered process of both administrative and judicial review of NASD disciplinary proceedings." *Swirsky*, 124 F.3d at 61. An aggrieved party may appeal a Hearing Panel decision to the NASD National Adjudicatory Council) ("NAC"), which can affirm, modify or reverse the Hearing Panel's decision. NASD Rule 9349(a). NAC decisions may be appealed to the SEC pursuant to 15 U.S.C. § 78s(d), and from the SEC to the United States Court of Appeals pursuant to 15 U.S.C. § 78s(y). An appeal of a NAC decision to the SEC operates as a stay of all sanctions other than a bar or expulsion. NASD Rule 9370(a).

4

B.  Howard's NASD Disciplinary Proceeding

Plaintiff Dan Howard was a registered representative with several NASD member securities firms until 2002. On or about January 7, 1999, NASD's Department of Enforcement issued a Complaint No. C11970032, captioned "Department of Enforcement v. Daniel Richard Howard." Following a hearing, the Hearing Panel issued a Decision on December 1, 1999. A copy of the Hearing Panel Decision is attached as Exhibit A to the Affidavit of Barbara Sweeney ("Sweeney Aff.").

The disciplinary complaint alleged, and the Hearing Panel found, that Howard had violated NASD rules by making unsuitable recommendations of speculative securities to an 85 year old customer[1], and by submitting inaccurate securities industry registration forms that failed to inform employers that he was under NASD investigation, although he had been so informed by NASD and specifically instructed that he was obligated to report the investigation under NASD rules. Exhibit A, Hearing Panel Decision at pp. 4, 10, 13, 15. Howard was fined $25,000 and suspended for 180 days. Exhibit A, Hearing Panel Decision at p. 22.

Howard appealed the Hearing Panel Decision to the NAC, which affirmed on the merits, but increased the suspension to two years. *Department of Enforcement v. Daniel Richard Howard*, Complaint No. C11970032, 2000 NASD Discip. LEXIS 16 (November 16, 2000) (NASD copy attached to Sweeney Aff. as Exhibit B).

Pursuant to 15 U.S.C. § 78s(d), Howard then appealed the decision the SEC. On July 26, 2002, the SEC affirmed the NASD's decision in every respect, and ordered that

---

[1] Although the customer was identified only by initials "JM" in the NASD decisions, it is not disputed that he was the stepfather of defendant Stuart Juckett. Neither the customer JM, who died before the hearing, nor Mr. Juckett testified in the NASD disciplinary proceeding.

5

Howard's two-year suspension from the securities industry begin on September 23, 2002.[2] *In the Matter of Daniel Richard Howard*, Adm. Proc. File No. 3-10392, SEC Rel. No. 34-46249, 2002 U.S. Dist. LEXIS 1909 (July 26, 2002). Accordingly, Howard's suspension ended on September 22, 2004. The fine has not been paid.

Specifically, the SEC found that "both the nature of the securities that Howard recommended to Meeker [the customer] and the level of trading activity were unsuitable." *In the Matter of Daniel Richard Howard*, 2002 U.S. Dist. LEXIS 1909 at * 10. The SEC further found that Howard had submitted "a false statement" on his securities registration form and had knowingly failed to advise his employers that he was under NASD investigation and that NASD was considering formal disciplinary action. *Id*. at * 12. The SEC concluded:

> As the NASD found, Howard engaged in egregious conduct. He betrayed the trust of an elderly customer in order to profit at the customer's expense. He also provided false information on his Form U-4 and blamed a firm employee for his own misstatement.

*Id*. at * 23-24.

Howard raised and the SEC considered and rejected the same arguments that Howard now raises to this Court as a basis for "voiding" the NASD disciplinary action. Specifically, the SEC rejected Howard's argument that the NASD decision was "null and

---

[2] Howard alleges in his complaint that NASD somehow "voided" its disciplinary sanction by "permitting" Howard to work in the securities industry with two different securities firms after he was suspended. Complaint at ¶¶ 54, 64. He is incorrect. Pursuant to NASD Rule 9370, all sanctions "other than a bar or an expulsion" are stayed by appeal to the SEC. Howard's two-year suspension was automatically stayed when he appealed his decision to the SEC, and did not take effect until September 23, 2002. Howard's registration records show that he worked for the two firms he mentioned in the Complaint, Acument Securities and Brookstreet Securities, from August 28, 2001 to September 11, 2002, and May 20, 1999 to November 18, 1999, respectively. Exhibit C, Howard's CRD record at pp. 3-4.

6

void" because it was issued more than 60 days after the hearing was completed. *Id.* at * 13-14. The SEC rejected Howard's arguments—also made here—that an NASD attorney had made a "religious and racial slur" against him, and that NASD's decision was "null and void" because of a conflict of interest due to NASD's hiring of a former compliance officer of Howard's former firm. *Id.* at * 15, 16.

Howard appealed the SEC decision to the United States Court of Appeals for the First Circuit pursuant to 15 U.S.C. § 78y. On September 19, 2003, the First Circuit affirmed the SEC's decision. *Howard v. SEC*, 77 Fed. Appx. 2, 2003 U.S. App. LEXIS 19454 (1st Cir. Sept. 19, 2003). The appeals court found that there was "substantial evidence" to support the SEC's substantive findings that Howard had made unsuitable investments for his customer and that he had filed an inaccurate registration form (*id.* at *3, 4), and also that Howard's "procedural claims are without merit." *Id.* at * 5. Howard did not seek review by the United States Supreme Court.

Congress created a single and comprehensive administrative system to govern securities industry disciplinary cases. Howard pursued all of the administrative and judicial remedies available to challenge his disciplinary proceeding. Having done so, he cannot now "start over" in this Court.

C.   The CRD System and Howard's Registration Records

NASD, pursuant to authority in § 15A(g)(3) of the Exchange Act, has established standards for the uniform licensing and registration of securities professionals. *Meyers v. NASD, Inc.*, Case No. 95-CV-75077, 1996 U.S. Dist. LEXIS 6044 (E.D. Mich. Mar. 29, 1996). Registration information is maintained by NASD for its own use and for use by state and federal regulatory authorities, securities firms, and (to a limited extent) the

7

investing public on a computer database called Central Registration Depository ("CRD"). *Meyers, id.* at * 3, * 4. CRD is a computer database developed by the NASD and the securities commissions of the 50 states (including Massachusetts), containing current registration information as well as regulatory and enforcement actions taken against securities industry personnel. *Id.* at * 4.

Section 15A(i) of the Exchange Act requires NASD to make certain information on CRD available for public disclosure, and immunizes NASD from liability to any person resulting from such disclosure. 15 U.S.C. § 78o-3(i); *Meyers, id* at * 4.

The SEC has specifically approved NASD's public disclosure system as consistent with NASD's responsibilities under Section 15A of the Exchange Act. SEC Release No. 34-42402, 65 F.R. 7582 (Feb. 15, 2000). In its approval order, the SEC found that NASD's public disclosure program is in the public interest, and "help[s] investors make informed choices about the individuals and firms with whom they choose to do business." 65 F.R. at 7584. NASD's public disclosure program contains information about persons currently registered, and persons who have been out of the industry less than two years. 65 F.R. at 7582. Information available through NASD's public disclosure program, BrokerCheck, consists of current and past employment experience, approved securities registrations, and disclosure information such as criminal convictions, securities and financial regulatory actions, pending and completed civil judicial actions and arbitration proceedings, pending investigations, and certain customer complaints that allege sales practice violations, forgery, theft, conversion or misappropriation of funds or securities. Exhibit C to Sweeney Affidavit, Screen Print from NASD Regulation website "What Information is Disclosed Through NASD

BrokerCheck?", http://www.nasdr.com/2002.asp.

A representative's full CRD record is available without subpoena to securities regulators (who must review and approve state licensing) and other law enforcement agencies, and also to securities firms who must review the full CRD record before hiring a representative, after obtaining the representative's written consent. *Dawson v. New York Life Ins. Co., Inc.*, 135 F.3d 1158, 1168 (7th Cir. 1997).

Dan Howard's complete CRD record is attached as Exhibit D. Mr. Howard's registration records are no longer available through NASD's BrokerCheck because his most recent securities industry registration terminated in September 11, 2002, more than 24 months ago. When Mr. Howard's record was available through BrokerCheck, a requester would have been able to access his employment history, securities registrations (licenses), and any disciplinary, litigation or criminal history that was in his CRD record. Exhibit C.

Howard alleges that NASD allowed defendant Stuart Juckett to "stalk" Howard using the BrokerCheck public database, that NASD was on "notice" that Juckett was "stalking" Howard, and that NASD should have blocked Juckett's access to BrokerCheck. Complaint at ¶¶ 37, 43, 46, 47, 48, 49, 57, 60). In support of this allegation, Howard attaches three documents: a 1997 letter from Howard's then-attorney to Juckett accusing Juckett of defamation; a police report dated January 24, 1998, filed by Howard, and accusing Juckett of harassment; and a September 14, 2002 letter from Acument Securities to Dan Howard relating to a statement that Howard made about Juckett in one of his registration forms, and asking Howard to resolve the matter with Juckett without involving Acument. None of these documents contains any reference to

NASD[3] or mentions the word "stalking." Two of the documents precede NASD's disciplinary action against Howard for his handling of the securities account of Juckett's stepfather. That action resulted in Howard's suspension from the industry for two years, and a $25,000 fine. The third document is a letter from Howard's former employer asking him to keep the company out of his dispute with Juckett.

Howard also alleges that NASD fraudulently altered one of his registration documents, either to "delete a racial slur" (Complaint ¶ 61), or in response to telephone calls from defendant Juckett. Complaint ¶ 56. Howard does not allege which of his many registration forms was altered or how it was altered; nor does he attach any of the allegedly altered forms.

NASD notes that in Exhibit A, the NASD disciplinary decision, the Hearing Panel found as an aggravating factor in determining the sanction that Howard had attempted "to intimidate his customer." Exhibit A, Hearing Panel Decision at p. 16. Specifically, the Hearing Panel found that after the customer had made a complaint to Howard's firm and settled his claim with that firm in 1996, Howard filed several small claims actions against the customer and his stepson, defendant Juckett, in East Hampton, New York, in Fairfax County, Virginia, and in Cambridge, Massachusetts. The complaints variously alleged libel, slander, conspiracy to commit bank fraud, malicious interference with contract, and harassment. Each complaint was dismissed by its respective court, appealed by Howard, and the appeals dismissed. The Panel also found that Howard had sent a letter to the Fairfax County Virginia Police Department dated December 16, 1996, copying the FBI

---

[3] The "NASDR" notation on the first two exhibits followed by a number, means that the documents were part of the certified record in Howard's appeal of the NASD disciplinary decision. The record includes documents that were introduced by Howard in the proceeding.

10

and the Virginia Attorney General, complaining that Juckett had threatened Howard over the telephone and had slandered him by calling his employer. Exhibit A, Hearing Panel Decision at pp. 16-17.

III.    STANDARDS FOR GRANTING MOTION TO DISMISS

   A.   Dismissal For Failure to State a Claim

In considering a motion for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "take the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel v. Ponce Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir. 1992), *citing, Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989).

   B.   The Affidavit of Barbara Sweeney and Attached Exhibits Do Not Convert the Rule 12(b)(6) Motion into a Rule 56 Motion

Although courts may not generally consider matters outside the pleadings when considering a motion to dismiss for failure to state a claim, there are limited exceptions that include "documents the authenticity of which is not disputed by the parties, for official public records, for documents central to plaintiffs' claim, or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

NASD has attached four documents, which are central to Howard's claims and which have been referred to in the Complaint. Each of the four documents has been authenticated as NASD business records by its corporate secretary. Exhibits A and B are copies of the NASD Hearing Panel Decision and NAC Decision that form the basis of Howard's claims against NASD. Exhibit C is a screen print from the NASD Regulation website describing the BrokerCheck program. Exhibit D is a copy of Howard's

11

registration record on Central Registration Depository. The NASD decisions are central to Howard's claims against NASD that the disciplinary proceeding is "null and void," and Howard refers to CRD and his registration record throughout the complaint, and seeks to have it changed by this Court. The information on BrokerCheck, attached as Exhibit C, is a document that merely describes the function of NASD's public disclosure program, and its authenticity can be easily confirmed by checking the provided url. Therefore, each of the documents may be considered by this Court without converting the motion into a Rule 56 summary judgment motion.

IV.    ARGUMENT

    A.    Howard's Claims Arising From His 1999 Disciplinary Proceeding Are Barred By Res Judicata

        1.    Standards for Application of Res Judicata

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980). This Circuit has adopted the transactional approach to determine whether causes of action are sufficiently related to support a *res judicata* defense. *Massachusetts School of Law v. American Bar Association*, 142 F.3d 26, 38 (1st Cir. 1998), *citing Kale v. Combined Ins. Co.*, 924 F.2d 1161, 1166 (1st Cir. 1991). "Under this approach, a cause of action is defined as a set of facts which can be characterized as a single transaction or series of related transactions." *Apparel Art Int'l, Inc. v. Amertex Enters., Ltd.*, 48 F.3d 576, 583 (1st Cir. 1995). *See also, Yoon v. Fordham University Faculty and Administrative Retirement Plan*, 263 F.3d 196, 200 (2d Cir. 2001); *International Union of Operating Engineers-Employers Construction Industry Pension, Welfare and Training Trust Funds*

12

*v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) (both circuits following "transactional approach" to *res judicata* claims).

        2.    <u>Res Judicata Applies to Howard's Claims Arising From His Disciplinary Proceeding</u>

Howard's disciplinary case was fully litigated by Howard in his appeal to the NASD NAC, from there to the SEC pursuant to 15 U.S.C. § 78s(d), and from the SEC to the U.S. Court of Appeals pursuant to 15 U.S.C. § 78(y). The parties and issues are the same in both the NASD disciplinary case, and the case before this Court. Consequently, all issues that were or could have been raised in Howard's disciplinary proceeding are barred by *res judicata*. This applies to <u>all</u> claims in Howard's complaint relating to his NASD disciplinary proceeding, whether they sound in Massachusetts law or otherwise. Although his Complaint before this Court is not a model of clarity, Howard clearly refers to the NASD disciplinary proceeding in ¶¶ 54, 63, 64, 65, 66, 67, and 71 of the Complaint. Specifically, Howard alleges, among other things:

- that NASD "fraudulently allowed Howard to work at both Brookstone Securities and Acument Securities while allegedly 'suspended for two years and fined $25,000.'" (¶¶ 54, 64);

- that NASD "failed to prepare a decision during the required 60-day deadline required by NASD regulations. Therefore, the NASD has stipulated to the fact that any sanctions on Plaintiff's CRD are Null and Void." (¶ 63);

- that "NASD stipulates, via 'Laches' that the entire enforcement action was, in fact, a sham." (¶ 65);

- "The sham enforcement action was in retaliation for Plaintiff's cooperation with the Massachusetts Securities Division." (¶ 66);

- "That sanctions and findings on Plaintiff's CRD are therefore null and void with no force or effect." (¶ 67);

Howard's allegations that NASD permitted defendant Juckett to "stalk" Howard are also barred by *res judicata* to the extent that they relate in any way to Howard's disciplinary case. The "stalking" issue was addressed in the Hearing Panel Decision of December 1, 1999, where the Hearing Panel considered Howard's witness intimidation of Juckett and his stepfather as an aggravating factor in determining his sanction. Exhibit A, Hearing Panel Decision at p. 16.

Howard's prayer for relief also requests at ¶ 12 "to keep Plaintiff's Securities Licenses valid and in effect until these matters are settled by the Federal Court." This request incidentally is moot because Howard does not presently have a valid securities license. Howard's license was suspended September 23, 2002, and his last securities industry registration terminated on September 11, 2002. Exhibit C, Howard's CRD report. NASD 1031(c) requires any person whose securities registration has been terminated for more than two years to retake the securities examination for any license he or she seeks to regain. Howard has not held a valid securities license since September 11, 2002, and cannot reenter the securities industry without paying his fine and retaking his securities examinations.

Each of these allegations arises from the same transaction as Howard's disciplinary complaint, which was fully litigated. Howard made many if not all of these

14

allegations in his disciplinary case, and they were specifically rejected by both the SEC and ultimately the Court of Appeals.

Consequently, all of Howard's claims relating to his NASD disciplinary proceeding have been fully litigated and are now barred by *res judicata*.

### B. Howard Has No Private Right of Action Against NASD For Claims Arising from NASD's Statutory Role in Regulating the Securities Industry

It is well established that Congress decided not to provide a private right of action against SROs under the Exchange Act or any of the rules promulgated thereunder. The Exchange Act provides no express private right of action against an SRO, and courts consistently have held no such private right of action against SROs should be implied. Indeed, by creating a system of administrative remedies and empowering the SEC with extensive authority, Congress made a considered choice that grievances against SROs should be presented to the SEC, not to the courts through private lawsuits for damages. *See Feins v. American Stock Exch., Inc.*, 81 F.3d 1215, 1221-22 (2d Cir. 1996); *Desiderio v. NASD, Inc.*, 191 F.3d 198, 207-08 (2d Cir. 1999); *Gustafson v. Strangis*, 572 F. Supp. 1154, 1158 (D. Minn. 1983) (the broad scheme of administrative remedies against SROs "suggests that Congress intended these means to be the exclusive means of enforcement); *see also Northwest Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 97 (1981) ("The presumption that a remedy was deliberately omitted from the statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.").

The well-established private right of action doctrine precludes Howard's attempt to couch his claims, however vaguely, in terms of state law. Because the Exchange Act's mechanism for the regulation of SROs is so comprehensive and reticulated, courts have

15

held that the Exchange Act—and rules promulgated thereunder—exclusively regulate SRO conduct. Any other system would negate Congress's intent that the SEC have complete authority over the propriety of SRO conduct, subject to review in a court of appeals. Allowing "a state to define by common law the regulatory duties of a self-regulatory organization" is "a result that cannot co-exist with the Congressional scheme of delegated regulatory authority under the Exchange Act." *Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209, at 1215 (9th Cir. 1998); *see also Barbara*, 99 F.3d at 59 (explaining that "allowing state law suits against [an SRO] . . . would clearly stand as an obstacle to the accomplishment and the execution of the full purposes and objectives of Congress").

Courts, therefore, have recognized that the form of the cause of action does not control, but instead the operative question is whether the state law claims relate to SRO activities. Because the Exchange Act provides the exclusive source of regulation over SRO activities, a complaint that concerns those activities must implicate the Exchange Act. For example, in *Sparta*, the Ninth Circuit was confronted by a complaint that was "carefully articulated in terms of state law." But the court looked behind the form of the alleged claims and determined that the complaint concerned Nasdaq's actions in the suspension of trading and the delisting of stocks, a matter exclusively the province of the Exchange Act, such that it must arise under the Exchange Act. 159 F.3d at 1212; *see also D'Alessio*, 258 F.3d at 100-02 (recognizing that the complaint, although framed under state law, concerned an SRO's enforcement activities and, therefore, could only arise under the Exchange Act); *FDIC v. NASD, Inc.*, 582 F. Supp. 72, 74-75 (S.D. Iowa 1984),

*aff'd*, 747 F.2d 498 (8th Cir. 1984) (relying on the private right of action doctrine to dismiss state-law negligence claims because they implicated SRO activities).

Howard's Complaint asserts claims against NASD arising from its administration of his disciplinary proceeding (see section III B, above), and NASD's making Howard's registration information available to potential employers and to the investing public through its CRD system. NASD is compelled to perform both of these functions pursuant to its duties under Section 15A of the Exchange Act, which contains no private right of action, and courts have consistently refused to imply such a private right of action. *See, e.g., Meyers v. NASD, Inc., supra* (holding that there is no private right of action against NASD for its publication on CRD of registration information concerning customer complaints arising from Prudential Securities oil and gas limited partnerships in 1980s)..

Howard does not allege that his registration information is inaccurate, or that any registration contained in his CRD record should not be there (except for his challenge to the validity of his disciplinary case, which is barred for the reasons above). Howard does not allege that he obtained a court order of protection making a "stalking" finding against Juckett, or ordering suppression of his registration information by NASD. Howard's entire "stalking" claim against NASD is based upon NASD's disclosure of Howard's registration information through its public disclosure program—a disclosure that NASD is required to make pursuant to Section 15A(i) of the Exchange Act. Howard's claim is barred because there is no private right of action against NASD for this regulatory action.

The same holds true for Howard's vague allegation that NASD somehow prevented Howard from securing employment with defendant H.D. Vest Financial in

17

August 2004 (Complaint at ¶ 59), although Howard's license was still suspended. As set forth above, NASD rules require employers to check a prospective employee's CRD record. To the extent that NASD made Howard's registration record available to H.D. Vest Financial, it did so solely in NASD's regulatory role, and in fulfillment of its statutory duties under the Exchange Act. Howard has no private right of action against NASD for its maintenance of Howard's registration information on the CRD system.

C.     Howard's Claims Against NASD Are Barred By Absolute Immunity

Numerous courts have held that SROs, such as the NASD are absolutely immune "from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions." *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir.), *cert. denied*, 122 S. Ct. 666 (2001); *see also id.* at 104 (holding that SRO is "immune from liability for claims arising out of the discharge of its duties under the Exchange Act"); *Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 58-59 (2d Cir. 1996) (SROs are "absolutely immune from damages claims arising out of the performance of [their] federally mandated conduct of disciplinary proceedings."); *Partnership Exch. Sec. Co. v. NASD, Inc.*, 169 F.3d 606, 608 (9th Cir. 1999) (holding that the NASD was protected by absolute immunity for its conduct "under the aegis of the Exchange Act's delegated authority") (internal quotation marks omitted); *Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209 (9th Cir. 1998)

The scope of this immunity is broad and without exception. As the Second Circuit explained in *D'Alessio*, an SRO "is entitled to immunity from suit when it engages in conduct consistent with the quasi-governmental powers delegated to it pursuant to the Exchange Act and the regulations and rules promulgated thereunder."

18

258 F.3d at 106. The immunity of SROs from suits arising from the execution of their regulatory and disciplinary functions is a necessity of the highly reticulated system that Congress established for regulating the securities market.

Under that system, Congress and the SEC delegated significant responsibility for front-line regulation of the securities markets to SROs, such as the NASD, and its subsidiary, the NASDR, under the supervision of the SEC. Instead of allocating all regulatory responsibilities to the SEC, Congress opted in the Exchange Act to develop a system of "cooperative regulation" in which private SROs would establish rules and standards of conduct for market participants and would enforce those rules, with all of their actions subject to the ultimate approval of the SEC. *Barbara*, 99 F.3d at 59 (finding that "safeguards exist[ ] in the regulatory framework of the . . . NASD"; finding further that the NASD is "subject to the SEC's regulatory requirements, which provide appropriate procedural safeguards to the disciplinary process"). In this way, SROs such as the NASD "perform a *variety of regulatory functions* that would, in other circumstances, be performed by a government agency." *Id.* at 59 (emphasis added). This being so, in *Barbara*, the Second Circuit squarely held that SROs enjoy "absolute immunity from suits for money damages with respect to the [SRO's] conduct of disciplinary proceedings." *Id.*; *see also D'Alessio*, 258 F.3d at 105 (holding that for purposes of absolute immunity an SRO "stands in the shoes of the SEC"). Indeed, in *D'Alessio*, under much more serious allegations of wrongdoing, the Second Circuit squarely rejected a claim that an SRO or its officials could be held liable for "assist[ing] the United States Attorney's Office and the SEC in their investigation and prosecution of

19

[plaintiff] by providing them with 'false, misleading and inaccurate information about the plaintiff," 258 F.3d at 97-98, 106, allegations entirely absent in this case.

In sum, the Complaint must be dismissed for failure to state a claim because it is barred by *res judicata*, and because all of Howard's claims are barred by the absence of a private right of action and by absolute immunity.

V.  CONCLUSION

For the foregoing reasons, Defendant NASD, Inc. respectfully requests this Court to dismiss this action.

The Defendant,

NATIONAL ASSOCIATION
OF SECURITIES DEALERS, INC.

By its attorneys,

/s/ Pamela E. Berman
Pamela E. Berman (BBO# 551806)
Adler Pollock & Sheehan PC
175 Federal Street, 12th Floor
Boston, MA 02110
(617) 603-0552 (Telephone)
(617) 482-0604 (Telecopier)
PBerman@apslaw.com (E-mail)

Date: October 4, 2004

*311871*