## DECLARATION OF DAN HOWARD

FILED
IN CLERKS OFFICE

I, Dan Howard, declare under penalty of perjury:

2004 OCT -8  P 4: 43

1. I am the Plaintiff Dan Howard, and am acting as my own attorney in the case of Dan Howard v. HD Vest Financial Services, Stuart Juckett, and National Association of Securities Dealers (Case No. 04 cv 11900 NG) in the United States District Court for the District of Massachusetts.
2. As of October 5, 2004 when Defendant "Noticed" me via a voicemail that he had filed a Motion to Dismiss I had not yet had time to take any discovery to obtain information to answer the Motion and defend myself against the charges made in the Motion.
3. The facts in this case are clearly in dispute.
4. Plaintiff intends to send at least one set of interrogatories to the Defendant. I also plan to depose witnesses Shae Maden, Daniel Wright, and David Sutton of HD Vest.
5. In light of Defendant's stipulation and admission that a registered representative number was sold to me, Plaintiff plans to call as a witness Mr. John Morgan of the Texas Securities Division. Mr. Morgan has a copy of the complaint and is being sent a copy of Defendant's admission that a Registered representative number was sold to me.
6. An oral contract was entered into by the parties and is enforceable under the provisions of the Statue of Frauds.
7. Further, each party received a benefit from the other's promise.
8. Plaintiff will present e-mails and phone records documenting the promises.
9. Plaintiff clearly states, in writing, actual damages of $500,000.
10. Plaintiff states that the "refund" of $344 was a bribe by the Defendant to Plaintiff not to bring this legal action. As of today, Plaintiff has not cashed the check.
11. Plaintiff denies that the signature on the contract is his and was in fact, as verified by an e-mail from HD Vest official Shae Maden, filled in and signed by her without my knowledge or consent.
12. The check that was cashed by HD Vest was clearly labeled "transfer of license."
13. Shae Maden sent an e-mail to Plaintiff praising his work history.
14. Plaintiff will be seeking all correspondence between HD Vest and one Stuart Juckett, an individual who has been stalking me to each of my employers.
15. Stuart Juckett stalked Plaintiff to HD Vest and HD Vest breached our contract as a result of interference and threats by Mr. Juckett, as verified in a telephone conversation with David Sutton of HD Vest.
16. This is unjust and unfair to Plaintiff.
17. Attached are NASD (National Association of Securities Dealers) documents documenting the bizarre stalking and fraudulent financial activities of Mr. Juckett.
18. One document, NASD exhibit No. 000703, is signed by Mr. James Nestor.....an employee of NASD Boston.
19. Plaintiff's entire CRD "record", as referred to by Defendant is Null and Void with no force or effect.

20. Plaintiff will present evidence that the matter was closed in 1997.
21. Defendant, by his Boston attorney, seeks to denigrate and stereotype Howard by representing to this Court that Howard deserves to be stalked and denied employment because of his alleged "record" and background.
22. Plaintiff is proud of his background.
23. The NASD Boston deleted from said record and CRD the fact that an official at NASD, Boston referred to Plaintiff as a "f......" spic from New York.
24. Plaintiff is Hispanic.
25. Defendant hired Plaintiff, according to Defendant, to "hang" Howard's license at HD Vest before it expired on 9/11/2004.

I declare under penalty of perjury that the foregoing is true and correct.

                                                Dan Howard, Pro-Se
                                                The Plaintiff

Dated: 10/08/2004
                                                *[signature]*

MAY-10-99  22:44           6176218774                         P 03      R-885    Job-898
05/10/1999  23:09    6176219774              DAN HOWARD                          PAGE  02



NASDR 000675

To:     Bernie LoVerde

From:   Tobin Scofeld/Jim Nestor

1996 OCT 10 PM 4:09

Re:     Meeker // JB-00649

---

The following is a response to the allegations within the letter addressed to the NASD:

The letter to Jim Nestor was faxed to the company by Stuart Juckett in Virginia, Mr. Meeker lives in New York.

Mr. Meeker had an account with Mr. Howard since 03/95 at First Albany and Mr. Howard has stated that the trading activity and securities are similar if not the same. Stuart Juckett has also stated that Mr. Meeker has other accounts at various firms, with a broker working out of Montana.

Within point "A" the bonds referred to were transferred over from another firm and purchased by another broker. On 07/12/96 Mr. Howard sold the bonds and placed him within bonds that upgraded him to a AAA insured bond, upgraded the face value, and shortened the maturity. (please see the 07/19/96 daily transaction memo) Mr. Meeker has stated to Jim Nestor on August 26, 1996 that all the trades were authorized.

Point "B" and "C" have the accusations of churning and unauthorized. Please note that Mr. Meeker has stated that he authorized all of the trades. Mr. Meeker did not respond to the client activity letters of 03/11/96 or 07/11/96. Also Mr. Meeker has been contacted in the past to verify trades by Jim Nestor. As an experienced investor the claim of not knowing what a mark-up is seems less than credible due to the fact that he has had and has other brokerage accounts.

Mr. Howard states that between August 19th and 21st he acted upon each unsolicited order he was given. As for the delay in the check the trades did not settle until August 26th, therefore the funds would not be available until August 27th. On August 27th the account showed that the money was in the cash position however later in the day cashiering informed the branch that it was actually in the SRF fund and had to be requested the next day. On August 28th the SRF request was submitted and a check was overnighted on the 28th, not on the 29th as stated in the letter.

Also please note that the acusation of forgery does not appear in this letter, due to the fact that MBNA bank has found the claim to be meritless.

Mr. Meeker has been contacted by letter and telephone over the past year without making an accusation or stating that he has had trouble with the account. Please note that Mr. Nestor included a business card for Mr. Meeker to keep on file within each of the client activity letters. It is our belief that Mr. Meeker is taking direction (see Jim Nestor's 8/26 memo) from Mr. Juckett be it forced or unforced. Mr. Meeker's account appears to have been in good standing until the market fluctuations of 7/96 (a five point drop in Palomar alone), something that we cannot be held accountable for. Both letters exaggerate facts and are full with outright lies.

05/  /1999   23:22    6176219774                    DAN HOWARD                              PAGE  02

NASDR 000703

1996 AUG 28 PM 2:25

08/26/96

At approximatly 11:00am Tobin received a call from a Stuart Juckett who is the son of John Meeker who has an account with Dan Howard. Tobin asked me to call him that he had some problems with his father's account. When I finally reached Mr. Juckett at 2:00pm he was irate that I did not have an answer for him and stated that he was going to the authorities. After aproximatley four minuets he decided to let me know what the problem with the account was. He stated that on a recent visit to his father's home that Dan Howard had stolen two checks from his father and deposited them within the account ($4000.00 each). He stated that he father has trouble writing and could not have written the checks. Throughout the entire conversation he stated that he wanted an answer as to what the company was going to do about the "fruad" that has been committed before Mr. Howard left for South America. I explained to Mr. Juckett over and over again that the alligations are extremely serous and we would need time to investigate the matter thoroughly. I asked him how he was so certain that Dan Howard had stolen the checks but he could not give me an answer, only thatthe checks were deposited to the account and that the house is messy and that his parents leave things out around the house giving Mr. Howard opportunity to steal the checks. He stated over and over again that he was going to call the secret service and the FBI.

He also stated that the account has been terribly mishandeled over the past two months, the portfolio contained penny stocks, the portfolio was down 25%, and that he believed that there was "churning going on". I explained to Mr. Juckett that Mr. Howard was had the account at First Albany when he worked there (a fact he did not know). That there was no penny stocks within the account and that the market has been very volitile the past two months. I explained that I would have to pull the last few months statements to look into the alligations of churning, but he insisted that I give him an answer now. I also explained that the account has been an active account since it was first transfered here in October of 1995 and that his father did not respond to the client activity letters that I personnally sent to him on March 11, 1996 and July 11, 1996. He stated that "my father receives quite a bit of mail and does not look at it all."

I also spoke to Mr. Meeker and asked him if he could have written the checks himself and did not remember it, he stated that he did not know. I asked that because the account was quite active if he spoke to Mr. Howard frequently and if he was aware of and authorized all the trades. The answer to both questions was yes. throughout this portion of the conversation someone was picking up an additional receiver and then hanging up. Eventually it stopped with someone on the line with us I then asked a question of the son to see if it was him and he answered. From this point whenever I asked a question I could hear Mr. Juckett telling the father what to say. Also the father would stumble on his words and have to refer back to his son for the answer.

After one hour on the phone he decided to let me fax him copies of the checks for verification. After looking at the checks he stated that the signature was not his father's current signature but resemble one from two or three years ago. We spoke for approximatley one hour with the son repeating the same acusations. As I did earlier in the day I told him that the home office would have to be contacted concerning this case because I did not have the resources to verify an acusation of forgery. I gave him the option of writing a letter seven times as he was stating he wanted an answer to this matter over and over again  The conversation ended by Mr. Juckett stating he will fax a letter to my attention.



September 4, 200?

**ACUMENT℠
HOLDING
COMPANY, INC.**

Mr. Daniel Howard
101 Federal Street, suite 1900
Boston, MA  02110

Dear Mr. Howard,

Stuart Juckett has been contacting us for several weeks in regards to a statement you made in your NASD U4 filing. Without any knowledge of the relationship that you have with Mr. Juckett, we have had to address his inquires and demands and, eventually, the telephone calls from the NASD in Boston. This has involved my time and our attorney Michael Bolgatz.

We have received instructions from the NASD in Boston to amend your U4 by altering or removing this statement.

I am asking you to address this issue with Mr. Juckett directly and not use this firm or the NASD's filing for other purposes. You had been an independent contractor with Acument Securities, Inc. (until the August 21, 2002) and matters such as these are to be addressed by you. Any legal cost that we incur because of this will be forwarded to you for payment.

Please notify Mr. Bolgatz what caused your statement about Mr. Howard and what steps you are taking to close this matter.

Michael Mehr has told me that you have requested information about obtaining a Series 24 license. You should confirm your licensing status with Michael Fisher at 1st Discount Brokerage, Inc. 1st Discount Brokerage has a strict guideline for minimum production requirement of its brokers and they are aware that you had little or no production during the period that you were licensed with Acument Securities. It is possible that your license may not be active at 1st Discount Brokerage.

Sincerely,

Robert Angle
President

Cc: Michael Fisher
    Michael Bolgatz
    Michael Mehr

301 Mission Street, 5th Floor
San Francisco, CA 94105
P: 415.597.6800
800.669.4483
F: 415.543.5063