UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
### Docket No.: 04cv11900 NG

FILED
IN CLERKS OFFICE

2004 OCT 15 P 4: 27

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| Dan Howard, Pro-Se, )<br><br>Plaintiff )<br>)<br>)<br>)<br>v. )<br>)<br>)<br>HD Vest Financial Services, )<br>Stuart K. Juckett )<br>National Association of Securities Dealers, )<br>)<br>Defendants )<br>) | **PLAINTIFF'S MOTION IN OPPOSITION TO NATIONAL ASSOCIATION OF SECURITIES DEALERS ("NASD") MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

1. The Defendant, NASD, represents before this court that the stalking of Plaintiff by defendant Stuart Juckett ("Juckett") through the NASD website, is somehow justified by the "rules and regulations" of the NASD.
2. The Defendant NASD lied to this court by representing that Plaintiff's alleged suspension "concluded on September 21, 2004."
3. Please find attached NASD document 003195 contradicting Defendant's falsification Plaintiff's record.
4. The NASD, through a signed investigation by their employee James Nestor, identified Stuart Juckett as a stalker.
5. Plaintiff has submitted the NASD document to this court.
6. The U.S. Civil Rights of Plaintiff take precedence over the "rules and regulations" of the NASD.
7. The NASD, as a common everyday operator of a website, seeks to twist the federal securities laws into into a blanket immunity for itself from foreseeable events such as stalking and discrimination.
8. The NASD also falsely represents to this court that the issue of stalking and website operation was somehow tried before this court by Plaintiff.
9. The Plaintiff has tried no such action before this court.
10. The Defendant also presents to this court the alleged "certification of NASD business records".
11. Defendant NASD has already stipulated and admitted that they falsified Plaintiff's CRD and U-4 record, in September 2002, by deleting a racial slur used against Plaintiff. What credibility can the court now assign to the "record" as "certified" by Defendant?
12. Said "record" is null and void with no force or effect, and is disputed by Plaintiff in the strongest possible terms. It has no relevance to Plaintiff's absolute right not to be stalked through the NASD website.

13. NASD employee James Nestor in 1997 settled plaintiff's case, as per NASD records. Therefore, the alleged "$25,000 fine and 2-year suspension", and all alleged "disciplinary actions", after 1997 are null and void with no force or effect.

14. NASD Boston employee James Nestor, in a signed investigation before this court, identified Juckett as a stalker.

15. The defendant NASD violated section 17(a) of the Securities Act, Section 10 (b) of the Exchange Act and Rule 10b-5 therunder.

16. The Defendant NASD, directly or indirectly, singly or in concert, by use of the NASD website, employed an instrument of communication to enable the stalking of Plaintiff by Juckett.

17. The NASD has stipulated and admitted in filings before this court that they possessed documents documenting Juckett's stalking activities via their website. Therefore, Juckett's stalking was a foreseeable event by the website operator.....NASD.

18. The Defendant is liable for civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. ss 77t(d), and Sections 21 (d) and 21A of the Exchange Act, 15 U.S.C. ss 78u(d)(3) and ss 78u-1.

19. Pursuant to Mass. R.Civ.P. 12(b)(1) and 12(b)(6) Plaintiff moves for dismissal of Defendant's motion for lack of subject matter jurisdiction and failure to prove immunity.

20. To grant the Defendant's Motion to Dismiss, the Defendant's jurisdictional averments in the Motion are entitled to no presumptive weight and the court must address the merits of the claim by resolving the factual disputes between the parties.

21. The facts are clearly in dispute and must be settled by a judge and jury.

22. *See Hiles v. Episcopal Diocese of Massachusetts, 437 Mass.505, 516 (2002) quoting Valentin v. Hospital Bella Vista, 254 F. 3d 358,363(1st Cir. 2001).*

23. The Defendant has raised no jurisdictional averments in their Motion. Therefore, the burden falls on NASD to come forward with jurisdictional facts to dispute the claims of Plaintiff Dan Howard.

24. Further, the Massachusetts Tort Claims Act ("MTCA") bars the NASD from immunity. G.L. c. 258, ss2.

25. G.L c.258, ss2 makes employers, including the NASD, liable for the wrongful and /or negligent acts and/or omissions of its employees.

26. Therefore, dismissal of Plaintiff's complaint by this court would be a violation of Mass R. P. 12(b)(6). Nader v. Citron, 372 Mass. 96, 98 (1977) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

27. Further, 42 U.S.C. ss 1983 bars the NASD from absolute immunity for the stalking activities of Juckett. The NASD is a common, everyday operator of a website.

28. Without exception, every Court of Appeals which has addressed the question of absolute immunity has ruled that only certain judicial entities are entitled to absolute immunity. See Slavin v. Curry, 574 F.2d 1256,1266 (5th Cir. 1978); Clark v. State of Washington, 366 F.2d 678 (9th Cir. 1966); Kissel v. Breskow, 579 F.2d 425 (7th Cir. 1978); Niklauss v. Simmons, 196 F. Supp. 691 (D. Neb.1961).

29. The NASD has stipulated and admitted to the fact before this court that it is a website operator and a company with employees in Washington, D.C.

30. The NASD claims that Plaintiff's license has allegedly expired September 11, 2002.

31. That claim is false because the selling of a representative number to Plaintiff by defendant HD Vest Financial in July 2004 extended Howard's license until July 2006.

32. This extension is per NASD rules.
33. Defendant agreed to "Hang " plaintiff's license for $344 and, as evidence, issued plaintiff a registered representative number upon the cashing of his check.
34. Defendant represents to this court that the NASD documents submitted by Plaintiff are not real NASD documents.
35. That claim is also false. It is contradicted by the attached documents, some on NASD stationary, with the very same numbering system.
36. Some of the documents are signed by NASD Boston employee James Nestor.
37. NASD's own employee is contradicting, in writing, what the NASD knew about the stalking of Plaintiff by Juckett.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court grant this Motion.

38. Plaintiff Dan Howard, the undersigned, hereby declares under penalty of perjury that, on October 14, 2004 he served the within **MOTION** on the following interested parties by mailing with postage thereon fully prepaid, a true copy thereof to:

Adler Pollock & Sheehan
175 Federal Street
Boston, Massachusetts 02110-2890

Stuart Juckett
15 Alexis Court
Amagansett, New York 11930

McDermott Will & Henry
28 State Street
Boston, Massachusetts 02109-1775

Respectfully Submitted,

Dan Howard, Pro-Se,
The Plaintiff

PO Box 440250
Somerville, MA. 02144
617-529-8886

Dated: October 14,2004

3

03/13/2000  15:08    61-7621-9774                        DAN HOWARD                                    PAGE   04

NASDR 003195



February 2, 2000
Sent Via Certified Mail
Return Receipt Requested

Daniel Richard Howard
4 Canal Park #205
Cambridge, Massachusetts 02141

Re:    NASD Case No. C11970032, District No. 11

Dear Mr. Howard:

On December 1, 1999, the District No. 11 District Business Conduct Committee rendered its Decision in the above Case, pursuant to which you are suspended from association with any NASD member in any capacity for one hundred and eighty (180) days. All periods of appeal have expired; therefore, this decision became final January 17, 2000.

This is to advise you that the suspension will commence with the opening of business on February 22, 2000 and conclude at the close of business on August 18, 2000.

We would like to bring your attention to Interpretive Material 8310-1 under Rule 8310 of the NASD Manual, entitled "Effect of a Suspension, Revocation or Bar."

Pursuant to Article IV, Section 2 of the NASD By-Laws, if you are currently employed with a member of the NASD, you are required to immediately update your Uniform Application for Securities Industry Registration or Transfer (FORM U4) to reflect this action. In addition, this action will also require disclosure on any future FORM U4 filing.

If you have any questions regarding the above information, please contact Mary Anne Graham, Regulatory Analyst, at (301) 212-3764.

Very truly yours,

Joan C. Conley
Senior Vice President
and Corporate Secretary

cc:    Fred McDonald, Director
       District No. 11



NASDR 000657

MAY-10-00  22:34                6176219774                    P.08        R-803    Job-096
05/10/1999  23:00         6176219774                DAN HOWARD                      PAGE  07

James M. Nestor

*Branch Compliance Officer*

# H. J. MEYERS & CO., INC.

*Investment Bankers*

125 High Street, High Street Tower, Suite 1600

Boston, MA 02110-2704

617-526-9200, Fax 617-526-9230

800-950-4852

Member NASD·SiPC

EXHIBIT

MAY-10-99 22:34    6176219774
05/10/1999  23:00    6176219774                    DAN HOWARD                P.00    VR-803    Job-806
AUG-29-1997  17:23   FROM  MD-HRD                                                              PAGE  00
                                                   TO          9 16176219774    P.02

NASDR 000659

**NASD**

National Association of Securities Dealers, Inc. • 15201 Diamondback Drive • Rockville. MD 20850-3389 • (301)590-6500

August 29, 1997

Dear Mr. Howard:

This letter is to confirm that James Nestor was an employee of the National Association of Securities Dealers, Inc. (NASD)  Mr. Nestor was employed by the NASD from 03/31/97 to 04/03/97.  Mr. Nestor's job title was examiner trainee.

Sean Washington
Human Resources Department
NASD



MAY-10-99 23:27          6176219774                    P.06      R-892      Job-906
05/10/1999  23:53    6176219774            DAN HOWARD

## NASDR 000625

I called Brian Dawson at MBNA bank twice to inquire about a letter stating that the bank was not going to take any action concerning the claim of the Meekers. Mr. Dawson stated that they believed the claim was meritless. He stated that he would not be able to send me a letter stating such unless the Meekers had requested one. If the Meekers requested one they would send me a copy for our files.

I asked to speak to his supervisor. I was put in contact with a female(I do not remember the name) who stated that they would be unable to send out a letter. I explained the u-4 process and how a claim like this could effect Mr. Howard's record even if the claim is fruitless. Again she refused to issue a letter stating bank policy.

James M. Nestor

1997 FEB 27 PM 3: 62

MAY-10-00  22:50                  6176219774

05/10/1999  23:15    6176219774                    DAN HOWARD                                    PAGE  09

NASDR 000699

BEST COPY
AVAILABLE



MAY-10-99  23:27          6176219774                          P 05       R-692      Job-906

.05/10/1999  23:53   6176219774              DAN HOWARD                                     PAGE   04

NASDR 000624

I996 AUG 28  PM 2: 25

08/27/96

Mr. Juckett called at approximatly 9:30am and asked if in any of the paperwork it gave Mr. Howard discretionary authority over the account. I explained that the company does noit allow any brokers to carry a discretionary account. He then stated that his father had no knowledge of any of the trades and that Mr. Howard only called him once or twice a month. I told him that I would have the phone records pulled and that his father told me that he spoke to Mr. Howard frequently and that he authorized all the trades. Mr Juckett then proceeded to argue with me that his father did not say such a thing to me and that I must have misunderstood the conversation. I explained twice that his father stated that he did indeed authorize each trade and that he frequently talked to Mr. Howard. I told Mr. Juckett that I would not stay on the phone to argue a point that was already discussed and that I would await his letter.

I received a call from Brain Dawson and MBNA (the issuer of the checks) (302-453-0555) concerning the account. He asked if Dan Howard denied all alligations, he was informed that he does by Mr. Howard and myself. He also stated he had questions concerning the account because the money was not actually stolen but moved to another account under Mr. Meeker's name. He stated that Mr. Juckett stated that H.J. Meyers would be giving back a portion of the money within twenty-four to forty-eight hours. I told him that there was never any discussion of that.

Mr. Juckett called back to stated that he was faxing the letter.

Mr. Juckett called back to see if I had received the letter. He also stated that he would give us no more that forty-eight hours to resolve the matter. Again I explained the procedures of a sending a letter to corporate compliance and that I doubted that an investigation could be completed in that time frame. He argued this point over and over. Finnaly he stated that he wanted "every penny his father ever sent in and money for his greif."



MAY-10-99  22:39        6176219774
05/10/1999  23:04       6176219774                      DAN  HOWARD                              PAGE   08

**R**
**R**
NASD REGULATION

NASD Regulation, Inc., District 11
260 Franklin Street, 16th Floor
Boston, MA 02110
617-261-0800
617-951-2337-Fax

CC: *M.F.I5*
*G.L.*
*T.T.*
*B L (FILE)*

**RECEIVED**

JUL 14 1997

COMPLIANCE DEPT.

*INCOMING*

July 8, 1997

_____NASDR 000669_____

Mr. Gary Liddicoat
Director of Compliance
H. J. Meyers & Co., Inc.
1895 Mt. Hope Avenue
Rochester, NY  14620

*JB 05995*

Re:    Complaint of Harold Brenner, CC NO.  E11960988
        Against:  H. J. Meyers & Co., Inc.
        and Ronald K. Rosenblatt, Registered Representative

Dear Mr. Liddicoat:

On behalf of the NASD, I would like to express appreciation for the cooperation and
courtesies extended to us, during the investigation of a customer complaint filed by
Mr. Harold Brenner, against your firm.

We have reviewed the report of this investigation and determined that no action is
warranted regarding the activities of your firm in  connection with the Association's
investigation of this customer complaint.

If you have any questions relating to our investigation or any other matter, please feel free
to contact this District Office.

Sincerely,

Eleanor M. Harris
Supervisor

EMH:lag

cc:    Mr. J. Bernard LoVerde, Jr.
        Corporatate Compliance officer
        H. J. Meyers & Co., Inc.

MAY-10-99 22:30    6176219774    P 08    R-804    Job-897
05/10/1999  23:04    6176219774                    DAN HOWARD                                    PAGE    07

R

NASD Regulation, Inc., District 11
260 Franklin Street, 16th Floor
Boston, MA 02110
617-261-0800
617-951-2337-Fax

**NASD REGULATION**

6 L
T.T
BL (FILE)
INCOMING

**RECEIV**

AUG 06 19:7

July 30, 1997                                                                    COMPLIANCE L_-7

NASDR 000667

Mr. Stephen B. Edds
Compliance Department
H. J. Meyers & Co., Inc.
1895 Mount Hope Avenue
Rochester, New York  14620-4596

RE:    Complaint of Sandra Margot-Giani, CC No. E11960982
       Against:  H. J. Meyers & Co., Inc.
       and Neil W. McCabe, Registered Representative

Dear Mr. Edds:

On behalf of the NASD Regulation, Inc., I would like to express appreciation for the
cooperation and courtesies extended to our examiner, Steven L. Cohen, during the
investigation of a customer complaint filed by Ms. Sandra Margot-Giani against your
firm.

We have reviewed the report of this investigation and determined that no action is
warranted regarding the activities of your firm in connection with the Association's
investigation of this customer complaint.

If you have any questions relating to our investigation or any other matter, please feel free
to contact this District Office.

Sincerely,

Eleanor M. Harris
Supervisor

EMH:lag