## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DAN HOWARD, Pro-Se )
  )
              Plaintiff, )
  )
      V. )
  )
HD VEST FINANCIAL SERVICES, )
STUART K. JUCKETT )
NATIONAL ASSOCIATION OF )
SECURITIES DEALERS, )
  )
           Defendants )
  )

CIVIL ACTION
NO. 04-11900-NG

Hon. Robert B. Collings

## PLAINTIFF DAN HOWARD'S EMERGENCY MOTION FOR ORDER OF PROTECTION FROM DEFENDANT STUART JUCKETT AND THE NASD ("NATIONAL ASSOCIATION OF SECURITIES DEALERS")

### OVERVIEW

Defendant Juckett and Defendant NASD (National Association of Securities Dealers) have stipulated to this court that Juckett, a stalker known to the NASD, has stalked Plaintiff from 1996 to 2004 by using the NASD website and file sharing service operated by the NASD. The NASD, through the attached exhibits, documented the stalking activities against Plaintiff. Plaintiff never gave permission to the NASD, a file sharing service and common website operator, to share his information with a known stalker. Now, Juckett's attorney, on or about November, 2004, threatened Plaintiff to drop this lawsuit, " or else we will go after you and your family's financial assets." Plaintiff and his family does not need yet another stalker, Attorney

David Grossack ,in his life. Plaintiff's U.S. Constitutional Right to Privacy takes precedence over the rules and regulations of the NASD. The NASD has released the attached numbered exhibits for this court's inspection, including the signed investigation by NASD employee James Nestor. The Boston office of the NASD hired James Nestor from the brokerage firm H.J. Meyers. The NASD has numbered the exhibits. The NASD also documented Juckett's attempted extortion of $4,000 from MBNA Bank in 1996 (SEE NASD copies of checks). Further, Attorney Gary Schultz, the Plaintiff's Family Attorney in New York, complained of Juckett's threats and stalking in the attached written letter. The NASD numbered that letter. In a separate matter, the NASD ignored the pleas of one Harold Brenner. The NASD exhibited a pattern of negligence with respect to complaints . Their own exhibits convict them. SEE NASD exhibit  000683 (COMPLAINT OF HAROLD BRENNER). The Plaintiff hereby provides the Court with these NASD exhibits. Stalkers often use the internet to track their victims and families and employers. Stalkers often have a grudge or distaste for people outside their preferred ethnic group. Stalkers often use the internet to track their targets. The NASD is a "for profit" private institution. The NASD has a regional office in Boston, Massachusetts. They advertise "Securities Conferences" on their website which generate huge fees to the NASD.  File Sharing Services and Website Operators, such as the NASD, often assert that their rules and procedures outweigh the U. S. Constitutional Right to Privacy. However, the incidence of stalking, as allowed by the NASD, falls disproportionably on those outside of certain preferred ethnic groups. This is an uncured constitutional question. Plaintiff is not a party or signatory to the NASD file sharing service. Further assert that Plaintiff's professional securities background somehow implies that he and his family deserve to be stalked and denigrated. Plaintiff has been a Licensed Securities Professional for 24 years and is proud of his Hispanic background. Defendant Juckett fits the profile of a stalker quite nicely. The NASD's own documents stipulate to that fact. The NASD's guilt, as charged in Plaintiff's original complaint, is beyond doubt. They numbered the documents regarding Jucketts' stalking. Plaintiff's file is still listed on the NASD website and file sharing service. Further, Plaintiff's license is in effect until July,2006 because HD Vest hired him in July,2004. Defendant HD Vest cashed his check and issued him a "registered representative" number. A "registered representative" number is similar to a "BBO" number used in the legal profession. A "registered representative" number can only be issued with NASD approval and a complete background check utilizing a "U-4" and the NASD website. A U-4

pursuant to **Federal Rule of Civil Procedure 12(a) and Rule 55.**

### COUNT 2-NEGLIGENCE (NASD)

7. Plaintiff realleges and reavers the Overview, and paragraphs 1-6
8. Defendant NASD, a file sharing service and website operator, owed a duty to Plaintiff to block a known stalker, Juckett, from their website.
9. NASD breached said duty.
10. NASD's breach of duty and contract caused Plaintiff damages of $10,000,000 in actual and compensatory damages.
11. The attached NASD exhibits indicate that the NASD in Boston exhibited a pattern of favoring preferred ethnic groups.
12. Plaintiff was excluded from said preferred ethnic group by the NASD.

WHEREFORE Plaintiff demands

1. Judgment that the Defendants be temporarily enjoined and restrained from maintaining this nuisance;

2. Judgment that Juckett be barred from the NASD website and from contact with Plaintiff or his past, present and future employers.

3. Judgment that the NASD must bar Juckett from its website.

4. Judgment that the NASD website and file sharing service be shut until procedures are in place to bar stalkers from said website and filing sharing service.

5. Judgment that the Defendants must abate said nuisance pursuant to **M.G.L. c 243. Also, Fed.R. Civ. P.58, Fed. R. Civ.P.79, Fed.R. CivP.5(b)(2)(D), and Fed.R. Civ.P.77(d).**

6. This Honorable Court award Plaintiff his costs to abate said nuisance, as well as costs of this action and for such other and equitable relief that this court deems fair and just.

7. A trial by jury on all issues so triable.

Respectfully,

The Plaintiff, Pro-Se

Dan Howard, Pro-Se

Dated: 12/29/04

I hereby certified that a true and correct copy of this motion was mailed this 29th of December,2004 to: McDermott,Will& Emery, David Grossback, Adler, Pollock&Sheehan, and Hughes Hubbard & Reed.

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3 Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece or on the front if space permits. | A. Signature<br>X   ☐ Agent   ☐ Addressee<br>B. Received by ( *Printed Name* )   C. Date of Delivery |
| Article Addressed to: | D. Is delivery address different from item If YES, enter delivery address below: |
|  | 3. Service Type<br>☑ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*)   ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*) | 7004 1350 0005 6463 2875 |

PS Form **3811**, February 2004          Domestic Return Receipt          102595-02-M-1540



Stuart Juckett
15 Alexis Court
Amagansett, N.Y. 11930

Stuart Juckett
15 Alexis Court
Amaganset, N.Y. 11930



7104 4455 5000 0540 8316

SENDER: **COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?
If YES, enter delivery address below:



MAY-20-99  08:51        6176219774                P.05      R-883    Job-105
05/20/1999  10:17    6176219774

DAN HOWARD
**Boston Police**
**INCIDENT REPORT**

NASDR 001496

| 01. | SUPPLEMENTARY ☐ | RE: | 02. COMPLAINT NO. | | 03. REPORT DIST. | CLEARANCE DIST | PAGE | OF |
|---|---|---|---|---|---|---|---|---|
| KEY SITUATIONS | ☐ DRUGS ☐ LICENSED PREMISES ☐ ELDERLY | | PD 980038658 | | G1110 | | 1 | 1 |
| ☐ JUVENILE ☐ COMMUNITY DISORDERS ☐ DOMESTIC ☐ OTHER | | | | | | | | |

| 04. TYPE OF INCIDENT | 05. CRIME CODE | 06. | STATUS | 07. DATE OF OCCUR | | 08. |
|---|---|---|---|---|---|---|
| THREATS | | ☐ ARREST ☐ INACTIVE ☐ UNFOUNDED ☐ ARREST ☐ UNDER 18 ☐ EXCEPT CL ☐ UNDER 18 | | A 1/16/98 | | B 1/23/98 |

| 09. LOCATION OF INCIDENT (NO. STREET) (INTERSECTION-ALPHA ORDER) | APT. | 10. DISPATCH TIME | | 11. TIME OF OCCUR | | |
|---|---|---|---|---|---|---|
| 2 INTERNATIONAL PL, BO | | 23:58 on 23:30 | | in 10:30 | | |

| 12. VICTIM-COMP. (LAST, FIRST, MI) | | 13. PHONE | 14. RACE | 15. MARITAL STATUS | |
|---|---|---|---|---|---|
| Howard Dan | 02141 | 621-9774 | | ☐ MARRIED ☐ UNMARRIED | |
| 16. ADDRESS (NO. STREET, CITY AND STATE IF OTHER THAN BOSTON OR MASS.) | APT. | OCCUPATION | | 17. AGE | 18. D.O.B. |
| 4 Canal PL Cambridge MA | 205 | Broker | | | |
| 19. PERSON REPORTING IF DIFFERENT THAN ABOVE | 20. ADDRESS | | | 21. PHONE | |

| 22. IS/ARE THERE A WITNESS TO THE CRIME | YES | 23. | | | | | |
|---|---|---|---|---|---|---|---|
| PERSON INTERVIEWED | AGE | LOCATION OF INTERVIEW | APT. | HOME ADDRESS | APT. | | |
| Matthew Nestor | 45 | Chief of Enforcement | | 1 Ashburton PL Amherst | | 1-877-335-48 | YES ☐ NO ☐ |
| Kevin Sullivan | | Investigator | | " | " | | YES ☐ NO ☐ |

| 24. ☐ ARREST ☐ WARRANT ☐ SUMMONS | 25. NAME (LAST, FIRST, MI) | | | 26. 3B. NO. | | 27. BOOKING NO. | 28. PHOTO NO. | 29. ALIAS | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ MISSING ☐ SUSPECT | Jackel, Stewart | | | | | | | | |
| 30. WARRANT NO. | 31. ADDRESS | | | 32. SEX | 33. RACE | 34. AGE | 35. HEIGHT | 36. D.O.B. | |
| | 9494 OAK Falls ct Great Falls VA | | | | | | | | |
| 37. SPECIAL CHARACTERISTICS (INCLUDING CLOTHING) | | | 22066 | 38. WEIGHT | 39. BUILD | 40. HAIR | 41. EYES | | |
| Tel # 703-759-7058 | | | | | | | | | YES ☐ NO ☐ |

| 42. CAR/SUSPECT VEHICLE (IF DESCRIBED) | | | | | | | |
|---|---|---|---|---|---|---|---|
| 43. ☐ STOLEN ☐ RECOV. ☐ I.N. SCENE ☐ ABAND. ☐ IN CUST. ☐ TOWED ☐ USED IN CRIME ☐ OTHER | 44. REG. STATE NO. | 45. PLATE TYPE | YEAR (EXP.) | 46. MODEL | | | |
| 47. VEHICLE MAKE-YEAR | 48. VEHICLE NO. | | 49. STYLE | 50. COLOR (TOP-BOTTOM) | | | |
| 51. OPERATOR'S NAME | N/A | 52. LICENSE NO. | 53. OPERATOR'S ADDRESS | | | | |
| 54. OWNER'S NAME | | 55. OWNER'S ADDRESS | | | | | YES ☐ NO ☐ |

| 56. IS THERE PROPERTY (IF IDENTIFIED) | | | | | | | |
|---|---|---|---|---|---|---|---|
| 57. TYPE OF PROPERTY | 58. SERIAL OR I-DENT-GUARD NO. | 59. BRAND NAME-DESCRIPTION | 60. MODEL | 61. VALUE | 62. UCR | 63. RECOV. | |
| N/A | | | | | | | YES ☐ NO ☐ |

| 64. IS THERE A SIGNIFICANT M.O. | | | | | |
|---|---|---|---|---|---|
| 65. TYPE OF WEAPON-TOOL | 66. NEIGHBORHOOD | 67. TYPE OF BUILDING | 68. PLACE/PT. ENTRY | | |
| Phone | Comm | Office | Phone | | |
| 69. WEATHER | 70. LIGHTING | 71. TRANSPORTATION OF SUSPECT (CAR, FOOT, MBTA, ETC.) | 72. VICTIM'S ACTIVITY | | |
| Rain | Art | unk | Working | | |
| 73. UNUSUAL ACTIONS AND STATEMENTS OF PERPETRATOR | | RELATIONSHIP TO VICTIM | | | YES ☐ NO ☐ |

| 74. IS THERE ANY PHYSICAL EVIDENCE (DESCRIPTION AND DISPOSITION IN NARRATIVE) | YES ☐ NO ☐ |
|---|---|

| 75. IS THERE ANY OTHER REASON FOR FURTHER INVESTIGATION (REASON BELOW) | YES ☐ NO ☐ |
|---|---|

**76. NARRATIVE AND ADDITIONAL INFORMATION** DID HS?

Perpetrator in #23 is harassing the people listed
in #22, by saying if they Don't Revoke mr Howards
Lic. they are going to be sued.
cle sts: There is no reason for the perpetrator to harass
him. cle sts: He is nervous and wants this matter delt
with A.S.A.P.

| 77. UNIT ASSIGNED | 78. TOUR OF DUTY | 79. REPORTING OFFICER'S SIGNATURE | 80. REPORTING OFFICER'S ID | 81. PARTNER'S ID | P.1 |
|---|---|---|---|---|---|
| ND98 | LAST HALF | | 1458 | | ☐ YES ☐ NO |
| 82. DATE OF REPORT | 83. SPECIAL UNITS NOTIFIED (REPORTING) | | | | TELETYPE NO. |
| 1/24/98 | | | | | |
| 84. TIME COMPLETED | 85. SIGNATURE OF REPORTING SUPERVISOR | | 86. ID NO. | 87. SIGNATURE DUTY SUPERVISOR | 88. DUTY SUP. ID |
| | | | 5483 | | |

Case 1:03-cv-11661-NG Document 111 Filed 12/28/2004 Page 8 of 21



**GARY SCHULTZ**
ATTORNEY AT LAW
305 BROADWAY · SUITE 602
NEW YORK, N.Y. 10007
(212) 267-6655
FAX (212) 732-2191

OF COUNSEL
DAVID A. GOLDSTEIN

2 NEW HEMPSTEAD ROAD
NEW CITY N.Y. 10956
(914) 638-9232

**NASDR 002321**

February 28, 1997

Stuart K. Juckett
9494 Oak Falls Court
Great Falls, Virginia 22066

Re: Howard v. Juckett

Dear Mr. Juckett:

Please be advised that I am the attorney for Daniel Howard.

Your settlement agreement is with H.J. Meyers & Co, Inc. not with Daniel Howard. Mr. Howard is not a signatory to that agreement nor did Mr. Howard consent to the terms of the agreement.

Notwithstanding that Mr. Howard is not a party to the settlement agreement, the agreement does prohibit Mr. Howard from pursuing his common law civil remedies for the tort of slander.

Your letters to Mr. Howard's employer is malicious and intended to cause him further injury.

Mr. Howard is pursuing his own civil remedies and does not need the permission of his employer to do so. If you continue with your malicious course of conduct, I will recommend to Mr. Howard that he amend his complaint to include a cause of action for malicious interference with contract.

In addition, I have reviewed the documentation in this case and it appears that you have accused Mr. Howard of theft of your father's monies. If that allegation is untrue, it constitutes the tort of slander per se and Mr. Howard would be entitled to compensatory relief for your tortious acts. The merits of Mr. Howard's allegations will be tried in Court not in malicious letter writing campaign to Mr. Howard's employer.

Very truly yours,

GARY SCHULTZ

GS/ca

cc: Daniel Howard



MAY-10-99   23:27        6176219774                        P 05      R-992    Job-906
05/10/1999   23:53   6176219774                    DAN HOWARD                        PAGE   04



1996 AUG 28 PM 2:25

**NASDR 000624**

08/27/96

Mr. Juckett called at approximatly 9:30am and asked if in any of the paperwork it gave Mr. Howard discretionary authority over the account. I explained that the company does not allow any brokers to carry a discretionary account. He then stated that his father had no knowledge of any of the trades and that Mr. Howard only called him once or twice a month. I told him that I would have the phone records pulled and that his father told me that he spoke to Mr. Howard frequently and that he authorized all the trades. Mr Juckett then proceeded to argue with me that his father did not say such a thing to me and that I must have misunderstood the conversation. I explained twice that his father stated that he did indeed authorize each trade and that he frequently talked to Mr. Howard. I told Mr. Juckett that I would not stay on the phone to argue a point that was already discussed and that I would await his letter.

I received a call from Brain Dawson and MBNA (the issuer of the checks) (302-458-0555) concerning the account. He asked if Dan Howard denied all alligations, he was informed that he does by Mr. Howard and myself. He also stated he had questions concerning the account because the money was not actually stolen but moved to another account under Mr. Meeker's name. He stated that Mr. Juckett stated that H.J. Meyers would be giving back a portion of the money within twenty-four to forty-eight hours. I told him that there was never any discussion of that.

Mr. Juckett called back to stated that he was faxing the letter.

Mr. Juckett called back to see if I had received the letter. He also stated that he would give us no more that forty-eight hours to resolve the matter. Again I explained the procedures of a sending a letter to corporate compliance and that I doubted that an investigation could be completed in that time frame. He argued this point over and over. Finnaly he stated that he wanted "every penny his father ever sent in and money for his greif."

NASDR 000675

DEFENDANT'S
EXHIBIT

To:     Bernie LaVerde

From:   Tobin Schofeld/Jim Nestor

Re:     Meeker // JB-00649

1995 OCT 10  PM 4:09

The following is a response to the allegations within the letter addressed to the NASD:

The letter to Jim Nestor was faxed to the company by Stuart Juckett in Virginia. Mr. Meeker lives in New York.

Mr. Meeker had an account with Mr. Howard since 03/95 at First Albany and Mr. Howard has stated that the trading activity and securities are similar if not the same. Stuart Juckett has also stated that Mr. Meeker has other accounts at various firms, with a broker working out of Montana.

Within point "A" the bonds referred to were transferred over from another firm and purchased by another broker. On 07/12/96 Mr.Howard sold the bonds and placed him within bonds that upgraded him to a AAA insured bond, upgraded the face value, and shortened the maturity. (please see the 07/19/96 daily transaction memo) Mr. Meeker has stated to Jim Nestor on August 26, 1996 that all the trades were authorized.

Point "B" and "C" have the accusations of churning and unauthorized. Please note that Mr. Meeker has stated that he authorized all of the trades. Mr. Meeker did not respond to the client activity letters of 03/11/96 or 07/11/96. Also Mr. Meeker has been contacted in the past to verify trades by Jim Nestor. As an experienced investor the claim of not knowing what a mark-up is seems less than credible due to the fact that he has had and has other brokerage accounts.

Mr. Howard states that between August 19th and 21st he acted upon each unsolicited order he was given. As for the delay in the check the trades did not settle until August 26th, therefore the funds would not be available until August 27th. On August 27th the account showed that the money was in the cash position however later in the day cashiering informed the branch that it was actually in the SRF fund and had to be requested the next day. On August 28th the SRF request was submitted and a check was overnighted on the 28th, not on the 29th as stated in the letter.

Also please note that the accusation of forgery does not appear in this letter, due to the fact that MBNA bank has found the claim to be meritless.

Mr. Meeker has been contacted by letter and telephone over the past year without making an accusation or stating that he has had trouble with the account. Please note that Mr. Nestor included a business card for Mr. Meeker to keep on file within each of the client activity letters. It is our belief that Mr. Meeker is taking direction (see Jim Nestor's 8/26 memo) from Mr. Juckett be it forced or unforced. Mr. Meeker's account appears to have been in good standing until the market fluctuations of 7/96 (a five point drop in Palomar alone), something that we cannot be held accountable for. Both letters exaggerate facts and are full with outright lies.

Case 1:00-cv-01004-NG    Document 51    Filed 05/25/2004    Page 11 of 21

 **NASD**®          NASDR 000611           DEFENDANT'S EXHIBIT

National Association of Securities Dealers, Inc. • 15201 Diamondback Drive • Rockville, MD 20850-3389 • (301)590-6500

August 29, 1997

Dear Mr. Howard:

This letter is to confirm that James Nestor was an employee of the National Association of Securities Dealers, Inc. (NASD)  Mr. Nestor was employed by the NASD from 03/31/97 to 04/03/97.  Mr. Nestor's job title was examiner trainee.

Sean Washington
Human Resources Department
NASD



MAY-10-99  22:44        6176219774                    P 17      R-885    Jo5-998
05/10/1999  23:09   6176219774           DAN HOWARD                      PAGE  25

RECEIVED
96 NOV -5 AM10: 15
NASDR DISTRICT 11

6 Ramshead Road
Medford, Mass 02155

November 4, 1996

DEFENDANT'S
EXHIBIT

Mr. Steve Cohen. Special Investigator
National Association of Security Dealers
260 Franklin St.
Boston, Mass 02110

**NASDR 000683**

RE:  Complaint

Dear Mr. Cohen:

Enclosed you will find a copy of a letter I sent to
Mr. Gary Liddicout, the Corp. Compliance Manager of
H. J. Meyers & Co., Inc.  I believe this letter will be
self-exlanitory.  I've also enclosed a copy of my order
for Cam-Net stock and a copy of an article in the Wall
St. Journal noting the arrest of the Chairman of the
Board of Cam-Net.

H. J. Meyers Boston office is located at 125 High St.
The salesman, Ron Rosenblatt, recently joined this
Company after being with A. G. Edwards for a number of years.

Your assistance in my complaint would be appreciated,
greatly.

Very truly yours,

Harold Brenner
(617) 395-2355

NASDR 000685

6 Ramshead Road
Medford, Mass 02155
Oct. 22, 1996

RECEIVED
OCT 28 1996
COMPLIANCE DEPT.

Mr. Gary Liddicout, Corp. Compliance Manager
H.J. Meyers & Co., Inc.
1895 Mt. Hope Ave.
Rochester, N.Y. 14620

Dear Mr. Liddicout:     RE:   CAMNET purchase of 9/16/96

As you suggested, I am writing about the inappropriate
sales approach that was used to coerce me into the purchase
of a little known company called Cam-Net Comm Netwrk.

Your representative, Ron Rosenblatt, who I have done
business with over the past 3-4 years while he was with
A.G. Edwards, called me on Oct. 16th. He knew from his
previous experience with my wife and me that we were
very conservative investors, buying exclusively Mass
Muni Tax Free issues.

Ron said, "Mr. Brenner I want to make some money for you.
I have a stock called Cam-net that I want you to purchase."
Having never heard of the Company I was reluctant to
discuss it, but Ron pleaded that I should "Trust Him" on
this one. Ron claimed he had certain information, not
available to the public, that would make the stock rise
significantly in a relative short time. At least $3.00
by December at which time he would recommend that I sell it.
When I questioned Ron about the information he had I was
told he was not at liberty to divulge the information as
it was confidential and that I should accept his recommend-
ation on his first hand knowledge of the Company.

I agreed to purchase 2500 shares of Cam-Net only because
of Ron's assurances and personal knowledge on what he knew
about Cam-Net and his request that I "Trust him on this one."

Ron went on to tell me that he had several orders for 20 to
30 thousand shares of Cam-Net on his desk and pleaded with
me to increase my order. He said he would never recommend
anything to me without personal knowledge of the company
and that I would not be sorry. I raised my purchase to
5000 shares of Cam-Net. Ron had to confirm the sale and
told me he would get back to me with the confirmed price.

About 20 minutes later Ron called again and quoted me $2.00

MAY-10-99  22:44        6176219774                    P 09      R-885    Job-888
05/10/1999  23:09                                                              PAGE  08
10/22/1998  12:34       6176219774      DAN HOWARD
                                                                    NASDR 000686
OCT-23-95 TUE  2:21 PM  E I METERS



per share plus commission.  Once again he strongly suggested
that I increase the number of shares that I purchase.  My
cash position was such that I had to decline any further
consideration.  Ron then told me that the purchase had to
be paid for within three days and I had to get a check out
immediately--which I did.

Ron's "Trust Me On This One", his assurance of an impending
rise in the price of Cam-Net stock, his claim of personal
knowledge of the Company, all means nothing when the Chair-
man of the board is arrested and the stock is suspended
from trading within a week after it is sold to me.

My wife and I are retired (I'm 74) and knowing the type of
investor we are I should never have been called on this
type of stock.  I would have hung up on anyone else that
called me on this issue.  Ron took advantage of our business
relationship to pressure me to purchase Cam-Net.

I believe I was duped into the purchase of Cam-Net and that
the sale of Cam-Net to me be reversed and the full purchase
price and commission be returned.

Ron called me this past Monday morning.  He was sorry for
what has happened and promised me that he would, in the
future, only call me on securities that coincide with my
current porfolio of Mass Tax Free Muni Bonds.

May I hear from you at your earliest convenience.

                            Yours very truly,

                            Harold Brenner



NASD Regulation, Inc., District 11
260 Franklin Street, 16th Floor
Boston, MA 02110

617-261-0800
617-951-2337-Fax

NASD REGULATION



EXHIBIT
F

RECEIVED

JUL 1 4 1997

COMPLIANCE DEPT.

*F 15*

*G.L.*
*T. T.*
*B L (FILE)*
*INCOMING*

July 8, 1997

Mr. Gary Liddicoat
Director of Compliance
H. J. Meyers & Co., Inc.
1895 Mt. Hope Avenue
Rochester, NY  14620

*JB 05995*

Re:    Complaint of Harold Brenner, CC NO.  **E11960988**
       Against:  H. J. Meyers & Co., Inc.
       and Ronald K. Rosenblatt, Registered Representative

Dear Mr.  Liddicoat:

On behalf of the NASD, I would like to express appreciation for the cooperation and
courtesies extended to us, during the investigation of a customer complaint filed by
Mr. Harold Brenner, against your firm.

We have reviewed the report of this investigation and determined that no action is
warranted regarding the activities of your firm in  connection with the Association's
investigation of this customer complaint.

If you have any questions relating to our investigation or any other matter, please feel free
to contact this District Office.

Sincerely,

Eleanor M. Harris
Supervisor

EMH:lag

cc:    Mr. J. Bernard LoVerde, Jr.
       Corporatate Compliance officer
       H. J. Meyers & Co., Inc.



BEST COPY AVAILABLE

NASDR 000699

MAY-10-99 22:53    6176219774
05/10/1999  23:15   6176219774       DAN HOWARD        PAGE 89






August 27, 1997

Mr. Gary Liddicoat
Director of Compliance
H. J. Meyers & Co., Inc.
1895 Mt. Hope Avenue
Rochester, NY  14620

RE:    Complaint of Brian Thompson, CC No. **E11961063**
         Against:  H. J. Meyers & Co., Inc.
         and Ronald K. Rosenblatt, Registered Representative

Dear Mr. Liddicoat:

On behalf of the NASD Regulation, Inc., I would like to express appreciation for the
cooperation and courtesies extended to our examiner, Steven L. Cohen, during the
investigation of a customer complaint filed by Brian Thompson against your firm.

We have reviewed the report of this investigation and determined that no action is
warranted regarding the activities of your firm in connection with the Association's
investigation of this customer complaint.

If you have any questions relating to our investigation or any other matter, please feel free
to contact this District Office.

Sincerely,

Eleanor M. Harris
Supervisor

EMH:lag



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT



**NASDR 000655**

February 3, 1999

Mr. Dan Howard
4 Canal Park
Cambridge, MA 02141

Dear Mr. Howard:

This letter acknowledges receipt of your recent letter to David Whitcomb dated January 12, 1999, concerning the NASDR. The Division of Enforcement appreciates your bringing this matter to our attention and you may be assured that the concern you have raised will be given careful consideration in view of the Commission's overall enforcement responsibilities under the federal securities laws. We note that you have written to Juan Marcelino, the District Administrator of the Commission's Boston District Office raising the same concerns. Please direct any future communications to the Boston District Office.

As I previously informed you in a letter dated November 16, 1998, it is the Commission's policy to conduct its investigations on a confidential basis. The Commission conducts its investigations in this manner to preserve the integrity of its investigative process and to protect persons involved therein when unfounded charges are made or the Commission determines that enforcement action is not necessary or appropriate. Subject to the provisions of the Freedom of Information Act, the existence or nonexistence of an investigation as well as information which may be gathered thereunder is not disclosed unless made a matter of public record in proceedings instituted before the Commission or in the courts.

The Commission is not authorized to render legal or financial advice or assist in private disputes. You may wish, therefore, to consult with private counsel to explore any possible legal remedies which may be available to you.

Sincerely,

Amy L. Cohen
Senior Attorney



PLAINTIFF'S
EXHIBIT

7

# H. J. MEYERS & CO., INC.
Investment Bankers

1895 Mount Hope Avenue, Rochester, New York 14620-4596
716-256-4700, Fax 716-256-5043, 800-678-4852
Member NASD SiPC

October 22, 1996

Mr. Johm B. Meeker
C/O Mr. Stuart K. Jucket
9494 Oak Falls Court
Great Falls, Virginia 22066

Dear Mr. Juckett:

As you are aware, we are in receipt of various communications from you and Mr.
Meeker, beginning with your letter of August 27, 1996 to Mr. Nester and culminating in
your letter of September 27, 1996 to the NASD. I will endeavor to address the allegations
raised in these letters.

Our branch compliance officer in Boston, Mr. James Nestor, has been in contact with Mr.
Brian Dawson at MBNA bank. Based upon that discussion and information provided by
Mr. Howard, there does not seem to be any basis for your forgery claim. Inasmuch as this
was not mentioned in any of our discussions or addressed in your letter to the NASD, I
can only assume that you are of the same opinion.

Mr. Howard claims to have discussed all the transactions that occurred in Mr. Meeker's
account prior to the orders being entered. According to our branch manager, Mr. Tobin
Senefeld, at no time in his initial discussion with you did you make a claim of
unauthorized trading. Furthermore, Mr. Nester spoke with Mr. Meeker and was informed
by Mr. Meeker that Mr. Howard called frequently and that he had authorized all the
trades. Confirmations for all the transactions were of course sent to Mr. Meeker and our
records indicate that no objections to the trades were ever received. Additionally, Mr.
Nester sent two letters to Mr. Meeker requesting that he call if he had any problems or
concerns with his account. No such phone calls were ever received. Based upon the
above, I can see no basis for your claim of unauthorized trading in Mr. Meeker's
account.

I have reviewed the confirmations for various transactions in this account. In all
instances, the mark-up/mark-down is clearly stated in cents per share charged for the
transaction. All commissions charged appear to be well within the NASD 5% guideline.
When Mr. Meeker opened an account with us, he was sent from Rochester new account
verification documents which included a brochure which discussed investing in OTC
securities.. In addition to the explanations received from Mr. Howard, this document
clearly describes mark-ups/downs and the risks associated with investing in OTC
securities. Lastly, Mr. Howard denies making any representation that the $15 handling

October 22, 1996
John B. Meeker
Page 2

fee shown on the confirmation was in lieu of a commission. The $15 is clearly labeled as a handling fee.

As you may know, Mr. Meeker originally had an account with Mr. Howard when Mr. Howard was with First Albany. Mr. Meeker's first transaction in that account was the purchase of 300 shares of Colonial Data Tech Corp.. Mr. Meeker subsequently opened an account at his insistence with this firm after Mr. Howard came to work for Meyers. This occurred in October, 1995. Mr. Meeker was apparently satisfied with his account here and consequently, in May, 1996, again at his insistence, transferred his account with McLaughlin, Piven, Vogel Securities, Inc. to this firm.

Mr. Howard claims that the nature of the trading in this account was discussed with Mr. Meeker on several occasions. Apparently, Mr. Meeker stated several times that his goal was to buy stocks in small companies prior to them becoming generally well known. According to Mr. Howard, this opinion was based on several articles Mr. Meeker had read in various financial publications. During the normal course of account review, letters were sent to Mr. Meeker on March 11 and July 11, 1996 inquiring into the activity into the account. No objections were ever received by the branch to these inquiries. It cannot be denied that overall, the account did suffer a loss. However, over one half of that loss can be attributed to your liquidating several positions in late August, 1996.

While not mentioned in any of your correspondence, I understand , based upon our telephone conversations, that you demand by way of settlement $50,000.00. Furthermore, based upon those same conversations, I understand that any discussions of settlement based solely upon the losses in the account is totally unacceptable. In lieu of your position, I must respectfully decline your offer of settlement.

Sincerely,

Gary C. Liddicoat
Director of Compliance

cc John B. Meeker
   Dan Howard
   Tobin Senefeld
   Jim Nestor
   NASD



MAY-10-99 23:06          6176219774                    P 04      R-989    Job-993
05/10/1999 23:32    6176219774
DEC 20 '96 10:21 FR HJ MEYERS & CO INC

DAN HOWARD
716 256 5065 TO BOSTON

PAGE  83
P.02/05

E

**NASDR 000717**

December 20, 1996

MEMO TO:  Dan Howard
FROM:       Gary Liddicoat
RE:             Meeker

Attached is Mr. Meeker's original letter of Aug. 27th and my response of Oct. 22nd. I believe the second paragraph of my response fairly summarizes my position regarding the allegations of forgery raised in Mr. Meeker's original letter. To reiterate, based upon information in the file detailing discussions between Mr. Nestor and MBNA bank, my discussions with Mr. Nestor and written responses provided by you, I continue to believe there is no basis for Mr. Meeker's claim of forgery. Additionally, Mr. Juckett has apparently retained an attorney. As such, you will need to refrain from any direct communication with Mr. Juckett.