## AFFIDAVIT OF
## DAVID C. GROSSACK

1. My name is David Grossack. I practice law at Suite 103, 1320 Centre Street, Newton Massachusetts 02459. I have been admitted to the Bar since December 14, 1981 and have been in good standing since that date.

2. My practice has included commercial disputes, civil rights and constitutional litigation, securities litigation, construction law, and domestic relations, among other areas.

3. In December of 1999, Massachusetts Lawyer's Weekly named me a Lawyer of the Year for a constitutional case I brought in this court.

4. The fair market value of my labor is $250.00 per hour.

5. I did not keep contemporaneous time sheets in this case. I have reconstructed an estimate of my time expended in this case which I believe accurately reflects an approximation of the time I spent defending Mr. Juckett in this matter.

6. The attached "Summary of Labor" includes an estimate that 34 hours of labor were placed in this case, and that at the fair value of my labor, $250.00 per hour, this comes to $8,500.00.

Signed under oath this
4th day of March, 2005

_____
David C. Grossack

## SUMMARY OF LABOR

November 2004:   Review of Complaint
Review of Motion to Dismiss by Steven Kasten, on behalf of H.D. Vest
Review of Declaration of Anika Pringle
Review of NASD Motion to Dismiss
Review of Prior Litigation History
Conversations with Client

    Estimated 3.5 hours

November 2004:   Preparation of Affidavit and Opposition to Motion to Default, travel from Hull to Boston to Hull to deliver Opposition and Affidavit

    Estimated 2.5 hours

November 2004:   Research and preparation of Motion to Dismiss
Conversations with Client, Plaintiff

    Estimated 6.5 hours

November 2004:   Repeated contact with court and client concerning continuing of hearing to January 20, Conversation with Attorney Berman

    Estimated 1.5 hours

December 2004:   Coordination with investigators concerning process services felony conviction

    Estimated .75 hours

January 11, 2005:   Review of Plaintiff's Emergency Motion for Order of Protection
Preparation of Response

    Estimated 2 hours

January 20, 2005:   Travel to court from Hull to Boston and to Hull, attendance at hearing.

    Estimated 3.75 hours

        Discussion with Client, exchanges of e-mail

    Estimated 2.25 hours

## **CERTIFICATE OF SERVICE**

I, David C. Grossack, hereby certify that on this 5th day of March, 2005, I sent a copy of the within Motion for Sanctions, Affidavit of David Grossack, and Certificate of Compliance to the opposing party.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　David C. Grossack, Esquire
　　　　　　　　　　　　　　　　　　1320 Centre Street, Suite 103
　　　　　　　　　　　　　　　　　　Newton, Massachusetts  02459
　　　　　　　　　　　　　　　　　　BBO # 212890
　　　　　　　　　　　　　　　　　　Telephone: (617) 965-9300
　　　　　　　　　　　　　　　　　　March 4, 2005

SJ005
DCG:ls

Ex '1'



Home | Previous Page

U.S. Securities and Exchange Commission

**United States of America
before the
Securities and Exchange Commission**

Securities Exchange Act of 1934
Rel. No. 46707 / October 23, 2002

Admin. Proc. File No. 3-10392

---

In the Matter of the Application of

DANIEL RICHARD HOWARD
4 Canal Park #205
Cambridge, Massachusetts 02141

For Review of Disciplinary Action Taken by the
NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.

---

### Order Denying Petition for Reconsideration

On July 26, 2002, we issued an opinion sustaining disciplinary action taken by the National Association of Securities Dealers, Inc. ("NASD") against Daniel Richard Howard, formerly a general securities representative of H.J. Meyers & Co., Inc., a former NASD member firm. [1] Howard now requests reconsideration of our decision.

We found that Howard violated NASD rules by making unsuitable recommendations to a customer, by giving a false response to a question on his Uniform Application for Securities Industry Registration ("Form U-4"), and by failing to amend that misstatement thereafter. We sustained the sanctions assessed by the NASD, a two-year suspension in all capacities from association with any NASD member and a $17,500 fine for the unsuitable recommendations, and a concurrent 90-day suspension and a $7,500 fine for the Form U-4 violations.

Howard does not question any specific matters relating to our findings of violation or the sanctions imposed on him. Instead, in summary fashion, he raises a number of procedural arguments, most of which were fully considered and rejected in our prior opinion.

1. On rehearing, Howard claims that the NASD's prosecuting attorney threatened that, if Howard even spoke to a securities lawyer, the attorney

would have Howard "barred from the business." According to Howard, he obeyed the attorney and was "irrevocably prejudiced" by the "revocation" of his right to a lawyer.

There is no evidence supporting this claim, and the record demonstrates that Howard did not consider himself under any constraint in seeking legal assistance. At Howard's request, the Hearing Officer postponed the initial pre-hearing conference in this matter to give Howard "a reasonable opportunity to retain counsel." At subsequent pre-hearing conferences, Howard stated that he was trying to raise the necessary funds to hire a securities lawyer. Finally, at the outset of the hearing, Howard announced "for the record" that he was appearing *pro se* because he could not afford an attorney.

2. Howard now argues that the action we have taken is improper since "the entire matter was settled and closed in 1996" when Meyers settled with the customer to whom Howard made unsuitable recommendations. The fact that Howard's employer entered into a settlement with his customer has no bearing on the NASD's authority to bring this action. While the interests of the individual investor may have been satisfied, the NASD had an obligation to determine the propriety of Howard's actions and, if it concluded that he had engaged in misconduct, to determine what remedial action was appropriate in the public interest.

3. Howard once again argues that the decision of the NASD Hearing Panel is "null and void" because the NASD failed to comply with the requirements of Rule 9268 of the NASD's Code of Procedure. [2] We previously considered and rejected this contention. As we noted, the rule calls for the Hearing Officer's *preparation* of a decision within 60 days (which must then be distributed to other members of the Hearing Panel for their approval). The rule does not require the *issuance* of a decision within that period, as claimed by Howard. Moreover, contrary to Howard's further assertions, there is no evidence that the decision was not prepared within the requisite time, distributed to and approved by the other panel members, and promptly served on the parties.

4. Howard again contends that he did not receive notice of the oral argument before the NASD's National Adjudicatory Council ("NAC"); that he was the victim of selective prosecution; and that the NASD's prosecuting attorney made a racial and religious slur against him.

We have already dealt with these arguments and found them lacking in merit. Howard was properly notified of the oral argument before the NAC, and he failed to show that he was subject to selective prosecution. The NASD attorney denied making any racial or religious slur and, despite Howard's claim to the contrary, there is no evidence in the record to support Howard's allegation.

The additional contentions raised by Howard have been considered and rejected. Accordingly, in light of the foregoing, IT IS ORDERED that the petition for reconsideration filed by Daniel Richard Howard be, and it hereby is, denied.

By the Commission.

Jonathan G. Katz
Secretary

### Endnotes

[1] *Daniel Richard Howard*, Securities Exchange Act Rel. No. 46269, 78 SEC Docket 427.

[2] Rule 9268 provides in relevant part: "Within 60 days . . . , the Hearing Officer shall prepare a written decision that reflects the views of the Hearing Panel . . . as determined by majority vote . . . . The Office of Hearing Officers shall promptly serve the decision of the Hearing Panel . . . on the Parties."

http://www.sec.gov/litigation/opinions/34-46707.htm

Ex '2'

Source: Legal > Cases - U.S. > Federal Court Cases, Combined
Terms: daniel richard howard (Edit Search)

*77 Fed. Appx. 2, \*; 2003 U.S. App. LEXIS 19454, \*\*;*
*Fed. Sec. L. Rep. (CCH) P92,505*

DAN HOWARD, Petitioner, v. SECURITIES AND EXCHANGE COMMISSION, Respondent.

No. 02-1939

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

77 Fed. Appx. 2; 2003 U.S. App. LEXIS 19454; Fed. Sec. L. Rep. (CCH) P92,505

September 19, 2003, Decided

**NOTICE:** [\*\*1] RULES OF THE FIRST CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** ON PETITION FOR REVIEW OF AN ORDER OF THE SECURITIES AND EXCHANGE COMMISSION.

**DISPOSITION:** SEC's opinion affirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Petitioner broker sought review of an order of respondent Securities and Exchange Commission, which sustained a disciplinary action taken against him by the National Association of Securities Dealers, Inc. (NASD).

**OVERVIEW:** An NASD hearing panel determined that the broker made unsuitable recommendations for the purchase and sale of speculative securities to an elderly customer and filed an inaccurate Uniform Application for Securities Industry Registration Form, falsely denying that he was the subject of a NASD investigation. In his petition, the broker focused on a series of procedural claims found by the Commission to be entirely without merit. The court concluded that, by failing to make a developed argument, the broker waived any objection to the Commission's findings on the merits. Further, substantial evidence supported the findings as to the procedural claims. The central claim was that the broker was the victim of selective prosecution by NASD because he was Hispanic and fell outside the preferred ethnic group of the NASD and the Commission. This argument, however, failed. The broker's identification of two non-Hispanic brokers who were investigated by NASD because of customer complaints and as to whom NASD had determined that no action was warranted, alone was insufficient to show that the other non-Hispanic brokers were similarly situated to the broker for purposes of selective prosecution.

**OUTCOME:** The Commission's order was affirmed.

**CORE TERMS:** substantial evidence, customer, trading, recommendation, speculative, unsuitable, selective, elderly, Nasd Conduct Rules, disciplinary action, case law, characterization, recommended, sustaining, inaccurate, brokers, amend, equitable

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Securities Law > Securities & Exchange Commission > Judicial Review
Administrative Law > Judicial Review > Standards of Review > Substantial Evidence Review
*HN1* The Securities and Exchange Commission's findings as to the facts are conclusive if supported by substantial evidence. 15 U.S.C.S. § 78y(4). The court's function is not to independently weigh the facts. Rather, after reviewing the record considered as a whole, including the evidence opposed to the Commission view, it is to determine whether substantial evidence supports the Commission's decision. More Like This Headnote

Civil Procedure > Appeals > Reviewability > Preservation for Review
Civil Procedure > Appeals > Briefs
*HN2* Arguments that are undeveloped on appeal are deemed waived. More Like This Headnote

Torts > Intentional Torts > Abuse of Process & Malicious Prosecution
*HN3* A successful selective prosecution claim would require the plaintiff to show that he was prosecuted while others similarly situated were not, and that the government's prosecution was in bad faith. More Like This Headnote

**COUNSEL:** Dan Howard on brief Pro se.

Jacob H. Stillman, Solicitor, Leslie E. Smith, Senior Litigation Counsel, and Catherine A. Broderick, Counsel to the Assistant General Counsel on brief for respondent.

**JUDGES:** Before Boudin, Chief Judge, Lynch and Howard, Circuit Judges.

**OPINION:** [*2] Per Curiam. **Daniel Richard Howard** petitions this court for review of an order of the Securities and Exchange Commission ("SEC") sustaining a disciplinary action taken against him by the National Association of Securities Dealers, Inc. ("NASD"). We have jurisdiction pursuant to 15 U.S.C. § 78y. *HN1* The SEC's findings as to the facts are conclusive if supported by substantial evidence. § 78y(a)(4). "[This court's] function is not to independently weigh the facts . . . . Rather, after reviewing the record considered as a whole, including the evidence opposed to the S.E.C. view, [it is] [*3] to determine whether substantial evidence supports [**2] the Commission's decision." Todd & Co., Inc. v. Securities & Exchange Comm'n, 557 F.2d 1008, 1013 (3d Cir. 1977).

Following a two-day hearing, a NASD Hearing Panel determined that Howard had violated NASD Conduct Rules 2110 and 2310, by making unsuitable recommendations for the purchase and sale of speculative securities to an elderly customer and filing an inaccurate Uniform Application for Securities Industry Registration Form (Form U-4), falsely denying that he was the subject of a NASD investigation. n1 The findings were affirmed by the NASD National Adjudicatory Council ("NAC") and Howard was fined $ 25,000 and suspended from NASD for two years. Based upon an independent review of the record, the SEC affirmed NASD's disciplinary action. See In re: **Daniel Richard Howard**, Securities Exchange Act Rel. No. 46269, 78 SEC Docket 427, 2002 SEC LEXIS 1909 (July 26, 2002). The SEC denied Howard's motion for reconsideration and Howard petitioned this court for review of the SEC's decision.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 NASD Conduct Rule 2110 provides as follows:

A member, in the conduct of his business, shall observe high standards of commercial honor

and just and equitable principles of trade.

NASD Conduct Rule 2310 provides, in relevant part, as follows:

> (a) In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**3]

In his pro se brief submitted in support of his petition, Howard focuses almost exclusively on a series of procedural claims found by the NAC and the SEC to be entirely without merit. His sole reference to the merits of the rule violations is as follows: "Petitioner denies each and every allegation of unsuitability and churning and denies falsifying his U-4." By failing to make a developed argument, Howard has waived any objection to the SEC's findings on the merits. See United States v. Zannino, 895 F.2d 1, 17 1st Cir. 1990) (explaining that HN2 ✦arguments that are undeveloped on appeal are deemed waived).

Even if there had not been a waiver, however, there is substantial evidence to support the SEC's findings. The SEC's findings that Howard's recommendations to his elderly customer, John B. Meeker, were unsuitable are supported by substantial evidence. The actual trading activity is undisputed. The characterization of the recommended securities as "speculative" is supported by research reports prepared by H.J. Meyers & Co., Inc. ("H.J. Meyers") (where Howard was employed as a general securities representative during the relevant period) and by SEC filings, as interpreted [**4] by a NASD investigator. Howard himself characterized the Meeker account as "speculative" in his testimony at the hearing before the NASD panel. The SEC's findings about the level of trading activity are also supported by the record. And the case law supports the SEC's characterization of these turnover rates and cost-to-equity ratios as reflecting excessive trading. See In re Peter C. Bucchieri, 52 S.E.C. 800, 805 (1996).

The record as a whole also supports the SEC's finding that "Meeker was an elderly man in poor health whose primary need was additional income and who sought investments that carried minimum risk." In re Howard, 2002 SEC LEXIS 1909, at *5. Given these facts known to Howard, substantial evidence supports the SEC's conclusion that "both the nature of the securities [*4] that Howard recommended to Meeker and the level of trading activity were unsuitable," in violation of NASD Conduct Rules 2110 and 2310. Id., at *9.

Similarly, there is substantial support in the record for the SEC's finding that Howard violated Conduct Rule 2110 by filing an inaccurate U-4 form and failing to amend it thereafter. Specifically, the SEC found that Howard [**5] admitted that he had received NASD's letter of October 15, 1998, informing him of his obligation to disclose NASD's pending investigation in his Form U-4 when answering Question 22I. In re Howard, 2002 SEC LEXIS 1909, at *11. It further found that after Howard joined Moors & Cabot, Inc. in October 1998, the firm filed a Form U-4 on his behalf, which Howard signed, that gave a negative answer to Question 22I. Id. The SEC found that "Howard did not amend his Form U-4 to correct that misstatement." Id. The SEC's conclusion that it was "clear that Howard was responsible for the false statement on his Form U-4," id., at *12, is supported by substantial evidence in the record. The case law supports the conclusion that such conduct violates "just and equitable principles of trade." See In re Thomas R. Alton, 52 S.E.C. 380, 382 (1995); In re Robert E.

Kauffman, 51 S.E.C. 838, 839 (1993).

With respect to Howard's procedural claims, substantial evidence in the record also supports the SEC's findings as to those claims. For the reasons articulated by the SEC, we agree with its conclusion that the procedural claims are without merit. [**6] Howard's central claim in his petition to this court is that he was the victim of selective prosecution by NASD because he is Hispanic and "falls outside the preferred ethnic group" of the NASD and the SEC. HN3 A successful selective prosecution claim would require Howard to show that he "'was prosecuted while others similarly situated were not'" and "that the government's prosecution was in bad faith." United States v. Peterson, 233 F.3d 101, 105 (1st Cir. 2000) (citation omitted). Howard identified two non-Hispanic H.J. Meyers brokers who were investigated by NASD because of customer complaints and as to whom NASD had determined that "no action is warranted." This alone is not sufficient to show that the other non-Hispanic brokers were "similarly situated" to Howard for purposes of his selective prosecution claim. We agree with the SEC's determination that there is insufficient support in the record to substantiate Howard's claims that the NASD attorney voiced racial or religious slurs and insults. The SEC's findings that Howard's procedural claims are without merit are substantially supported by the record.

The SEC's opinion dated July 26, 2002, sustaining the NASD's [**7] findings of conduct rule violations and the sanctions imposed, is affirmed.

Source: Legal > Cases - U.S. > Federal Court Cases, Combined
Terms: **daniel richard howard** (Edit Search)
View: Full
Date/Time: Tuesday, November 2, 2004 - 7:24 AM EST

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Ex '3'

# WARRANT IN DEBT

VA. CODE ANN § 16.1-79

**FAIRFAX COUNTY**
CITY OR COUNTY

**COURT ROOM 2-A, 4110 CHAIN BRIDGE ROAD, FAIRFAX, VIRGINIA 22030**
General District Court
STREET ADDRESS OF COURT

CASE NO. 97-3277

HOWARD, DANIEL, RICHARD
PLAINTIFF(S) (LAST, FIRST, MIDDLE NAME)

v.

TUCKETT, STUART
DEFENDANT(S) (LAST, FIRST, MIDDLE NAME)

TO ANY AUTHORIZED OFFICER: You are commanded to summon the Defendant(s).
TO THE DEFENDANT(S): You are summoned to appear before this Court at the above address on 3/3/97 9:30 AM to answer the Plaintiff(s) civil claim (see below).
  RETURN DATE AND TIME

4 CANAL PARK
CAMBRIDGE, MA. 02141
1-800-950-4852

9494 OAK FALLS COURT
GREAT FALLS, VIRGINIA 22066

HEARING DATE AND TIME: MARCH 3, 1997 @ 9:30 A.M.

DATE ISSUED 2-5-97

Joy Ritchey
☐ CLERK ☒ DEPUTY CLERK ☐ MAGISTRATE

**Claim:** Plaintiff's claim that Defendant(s) owe Plaintiff(s) a debt in the sum of

$ 10,000 net of any credits, with interest at ........% from .......... until paid.
                                    INTEREST RATE  DATE FROM WHICH IS DUE

$ 30 costs, and $ .......... attorney's fees with the basis of this claim being
      COSTS                        ATTY. FEE

☐ Open Account  ☐ Contract  ☐ Note  ☒ Other (EXPLAIN) SLANDER,
LIBEL, CONSPIRACY TO COMMIT BANK FRAUD,
DEFAMATION OF CHARACTER

Homestead Exemption waived? ☒ Yes ☐ No

1/28/97                    Daniel R. Howard
DATE                      ☒ PLAINTIFF ☐ PLAINTIFF'S ATTY ☐ PLAINTIFF'S EMPLOYEE

# WARRANT IN DEBT

**TO DEFENDANT:** You are not required to appear; however, if you fail to appear, judgment may be entered against you. See the additional notice on the back side about requesting a change of trial location.

☐ To dispute this claim, you must appear on the return date to try this case.

☒ To dispute this case, you must appear on the return date for the judge to set another date for trial.

* * *

Bill of Particulars .......... ORDERED .......... DUE ..........

Grounds of Defense .......... ORDERED .......... DUE ..........

ATTORNEY FOR PLAINTIFF(S) ..........

ATTORNEY FOR DEFENDANT(S) ..........

---

## Case Disposition

JUDGMENT that Plaintiff(s) recover against ☐ named Defendant(s) ☐ ..........
$ .......... net of any credits, with interest at ..........% from ..........
  COSTS                          INTEREST RATE   DATE FROM WHICH IS DUE
costs, and $ .......... attorney's fees

Homestead Exemption waived? ☐ Yes ☐ No

☐ JUDGMENT FOR ☐ NAMED DEFENDANT ☐ cannot be demanded

☐ NON-SUIT ☐ DISMISSED

Defendant(s) Present? ☐ Yes ☐ No

H.A.[signature]  ..........
DATE            JUDGE

FORM DC-412 PC (7/96) (114.6-01.08-96)

EX 4

| STATEMENT OF SMALL CLAIM AND NOTICE OF TRIAL | For Court Use Only | DOCKET NO. SC 667/97 | Trial Court of Massachusetts Small Claims Session |

**PART 1:** ☐ BOSTON MUNICIPAL COURT   ☒ DISTRICT COURT CAMBRIDGE Division   ☐ HOUSING COURT _____ Division

**PART 2 — PLAINTIFF'S NAME, ADDRESS, ZIP CODE AND PHONE:**
DANIEL R. HOWARD
4 CANAL PARK #205
CAMBRIDGE, MA. 02141
PHONE NO: 800-950-4852

PLAINTIFF'S ATTORNEY (if any): Name: ___  Address: ___  Phone No: ___

**PART 3 — DEFENDANT'S NAME, ADDRESS, ZIP CODE AND PHONE:**
STUART JUCKETT
9494 OAK FALLS COURT
GREAT FALLS, VA. 22066
PHONE NO: 703-759-7058

ADDITIONAL DEFENDANT (if any):
Name: JOHN MEEKER
Address: 66 DAVIDS LANE
EAST HAMPTON, N.Y. 11937-2704
PHONE NO: 516-324-0645

**PART 4 — PLAINTIFF'S CLAIM.** The defendant owes $4,000 plus $19 court costs for the following reasons:
4657A000003/27/97SMAL CLAIM   15.00
4657A000003/27/974/ SURCHGE    4.00

MALICIOUS INTERFERENCE WITH CONTRACT, SLANDER PER SE, LIBEL PER SE, HARASSMENT, CONSPIRACY TO COMMIT BANK FRAUD.

SIGNATURE OF PLAINTIFF X Daniel R. Howard    DATE 3/24/97

**PART 5 — MEDIATION:** Mediation of this claim may be available prior to trial if both parties agree to discuss the matter with a mediator, who will assist the parties in trying to resolve the dispute on mutually agreed to terms. The plaintiff must notify the court if he or she desires mediation; the defendant may consent to mediation on the trial date.
☐ The plaintiff is willing to attempt to settle this claim through court mediation.

**PART 6 — MILITARY AFFIDAVIT:** The plaintiff states under the pains and penalties of perjury that the:
☒ above defendant(s) is (are) not serving in the military and at present live(s) or work(s) at the above address.
☐ above defendant(s) is (are) serving in the military

X Daniel R. Howard   3/24/97
SIGNATURE OF PLAINTIFF   DATE

**NOTICE TO DEFENDANT:** You are being sued in Small Claims Court by the above named plaintiff. You are directed to appear for trial of this claim on the date and time noted to the right.
If you wish to settle this claim before the trial date, you should contact the plaintiff or the plaintiff's attorney.

SEE ADDITIONAL INSTRUCTIONS ON THE BACK OF THIS FORM

FIRST JUSTICE: ARTHUR SHERMAN   CLERK MAGISTRATE OR DESIGNEE: ROBERT MOSCOW

NAME AND ADDRESS OF COURT:
Cambridge District Court
40 Thorndike Street
Cambridge, MA 02141
15th Floor, 494-4315

DATE AND TIME OF TRIAL:
May 1/97 AT 9:00
ROOM NO. 15A

BOTH THE PLAINTIFF AND THE DEFENDANT MUST APPEAR AT THIS COURT ON THE DATE AND TIME SPECIFIED — A COURT USE ONLY

INSTRUCTIONS FOR FILING A SMALL CLAIM — You must complete Parts 1-6 of this form. See instructions on reverse.

ATENCION: ESTE ES UN AVISO OFICIAL DE LA CORTE. SI USTED NO SABE LEER INGLES, OBTENGA UNA TRADUCCION.

| STATEMENT OF SMALL CLAIM AND NOTICE OF TRIAL | For Court Use Only | DOCKET NO. SC 667A97 | Trial Court of Massachusetts Small Claims Session |
|---|---|---|---|

- ☐ BOSTON MUNICIPAL COURT
- ☒ DISTRICT COURT — Cambridge Division
- ☐ HOUSING COURT _____ Division

**PART 2**

PLAINTIFF'S NAME, ADDRESS, ZIP CODE AND PHONE
Daniel R. Howard
4 Canal Park #205
Cambridge, MA 02141

PHONE NO: 1-800-950-4852

PLAINTIFF'S ATTORNEY (if any)
Name: _____
Address: _____
PHONE NO: _____

**PART 3**

DEFENDANT'S NAME, ADDRESS, ZIP CODE AND PHONE
John Meeker
66 Davids Lane
East Hampton, NY 11937-2704

PHONE NO: 516-324-0645

ADDITIONAL DEFENDANT (if any)
Name: _____
Address: _____
PHONE NO: _____

**PART 4**

PLAINTIFF'S CLAIM. The defendant owes $ 2000.00 plus $ 19.00 court costs for the following reasons: Give the date of the event that is the basis of your claim.

Malicious interference with contract, slander per se, libel per se, harassment, conspiracy to commit bank fraud.

SIGNATURE OF PLAINTIFF  X _____   DATE _____

**PART 5**

MEDIATION: Mediation of this claim may be available prior to trial if both parties agree to discuss the matter with a mediator, who will assist the parties in trying to resolve the dispute on mutually agreed to terms. The plaintiff must notify the court if he or she desires mediation; the defendant may consent to mediation on the trial date.
☐ The plaintiff is willing to attempt to settle this claim through court mediation.

**PART 6**

MILITARY AFFIDAVIT: The plaintiff states under the pains and penalties of perjury that the:

☐ above defendant(s) is (are) not serving in the military and at present live(s) or work(s) at the above address.

☐ above defendant(s) is (are) serving in the military

X _____
SIGNATURE OF PLAINTIFF   DATE

**NOTICE OF TRIAL**

NOTICE TO DEFENDANT:
You are being sued in Small Claims Court by the above named plaintiff. You are directed to appear for trial of this claim on the date and time noted to the right.

If you wish to settle this claim before the trial date, you should contact the plaintiff or the plaintiff's attorney.

SEE ADDITIONAL INSTRUCTIONS ON THE BACK OF THIS FORM

NAME AND ADDRESS OF COURT
Cambridge District Court
40 Thorndike St
Cambridge Mass 02141
15th Floor 494-4315

DATE AND TIME OF TRIAL
May 1/97   AT 9:00

ROOM NO. 15A

BOTH THE PLAINTIFF AND THE DEFENDANT MUST APPEAR AT THIS COURT ON THE DATE AND TIME SPECIFIED ▲ COURT USE ONLY ▼

FIRST JUSTICE: Arthur Sherman
CLERK-MAGISTRATE OR DESIGNEE: Robert Moscow

INSTRUCTIONS FOR FILING A SMALL CLAIM — You must complete Parts 1-6 of this form. See instructions on reverse.

DC-SC-1 (8/86)   ATENCION: ESTE ES UN AVISO OFICIAL DE LA CORTE. SI USTED NO SABE LEER INGLES, OBTENGA UNA TRADUCCION.

## INSTRUCTIONS TO THE PLAINTIFF AND THE DEFENDANT

1. **WHAT IS THIS DOCUMENT?**
   This is your copy of the "Statement of Small Claim and Notice of Trial" which the court has issued in this case. The plaintiff named on the front of this form has sued the defendant in small claims court for the amount and reasons stated. This form notifies you when you must appear for trial at the court.

2. **WHAT IS SMALL CLAIMS COURT?**
   The small claims court is not a separate court, but a special session of the District Court, the Boston Municipal Court or the Housing Court. It is designed to resolve smaller cases, making it easier and less expensive for the public to use the court.

3. **HOW IS THE DEFENDANT NOTIFIED OF THIS CLAIM?**
   The defendant is sent two copies of this "Statement of Small Claim and Notice of Trial" — one by first class mail and one by certified mail. If the plaintiff inquires, the court will tell the plaintiff if the Post Office is unable to notify ("serve") the defendant.

4. **ARE ATTORNEYS NEEDED IN SMALL CLAIMS COURT?**
   No, but you may hire one if you wish.

5. **WHAT ARE "COSTS"?**
   If the plaintiff prevails, or if both sides settle the claim, the plaintiff may recover from the defendant as "costs" the court filing fee and postage. By court order the plaintiff may sometimes recover certain other costs of bringing the claim.

6. **IS THE DEFENDANT REQUIRED TO FILE AN ANSWER?**
   The defendant may send a signed letter to the court, saying clearly and simply why the plaintiff should not prevail. This "answer" should state those specific parts of the claim that are denied. However, the defendant is not required to file an answer. The defendant should send the plaintiff a copy of the answer, if one is filed. In the answer, or in a separate letter sent to the court, the defendant may set forth in writing any claim against the plaintiff within the jurisdiction of the small claims court. Both claims will be treated as one case if the defendant mails a copy of his or her claim to the plaintiff at least ten days before the scheduled trial date, or if the judge orders that they be so treated. Such claims are not compulsory. The plaintiff need not file a written answer to the defendant's claim.

7. **WHAT IF THE DEFENDANT ADMITS HE OWES ALL THE MONEY?**
   He or she should contact the plaintiff and arrange to make payment. If payment is not made before the trial date, both the plaintiff and defendant must appear in court.

8. **WHAT IF THE DEFENDANT ADMITS HE OWES THE MONEY BUT NEEDS TIME TO PAY?**
   He or she must appear in court on the trial date and give his or her reasons for requesting time to pay.

9. **WHAT IF THE DEFENDANT BELIEVES HE OWES NOTHING, OR ONLY SOME OF THE MONEY CLAIMED?**
   He or she must appear in court on the trial date. He or she will be able to question how the plaintiff arrived at the amount claimed.

10. **WHAT IF THE DEFENDANT BELIEVES THE PLAINTIFF OWES HIM MONEY?**
    The defendant should indicate in his or her answer, or tell the court, that the plaintiff owes him or her money. The plaintiff's original claim and the defendant's claim against the plaintiff (called a "counterclaim") may be treated as one case and tried on the date the original claim was scheduled. The defendant is urged, but not required, to send the plaintiff a copy of a written counterclaim, if one is filed.

11. **WHEN AND WHERE DO THE PLAINTIFF AND THE DEFENDANT HAVE TO GO TO COURT?**
    Unless the plaintiff and defendant settle this case before the trial date, both sides must appear in court on the date the case is scheduled for trial. The date, time and the court location to which both sides must report are shown on the front of this form.

12. **WHAT IF I CANNOT COME TO COURT ON THE TRIAL DATE?**
    You should call or write the person on the opposing side and ask him or her to agree to postpone ("continue") the case. Continuances should be only for a good reason, such as illness, an emergency, or the unavailability of a witness. If both sides agree, or if the opposing side does not agree, or if you are unable to reach the person on the opposing side, you must write the Clerk-Magistrate of the court to ask that the court give you a continuance. Do not wait until the last minute. If the other side makes a reasonable request for a continuance, it may save you some inconvenience if you agree to the request.

13. **WHAT IF I DO NOT COME TO COURT ON THE TRIAL DAY?**
    If the plaintiff does not appear for trial, and the defendant does appear, the case will be dismissed. If both the plaintiff and the defendant do not appear for trial, the claim will also be dismissed. If the defendant does not appear for trial, and the plaintiff does appear, the court can enter a default judgment and order the defendant to pay the amount claimed. The judge may ask the plaintiff to present some evidence of the claim, even if the defendant is not present.

14. **HOW SHOULD I PREPARE FOR TRIAL?**
    It may be helpful to write down ahead of time the facts of the case in the order in which they occurred. This will help you organize your thoughts and make a clear presentation of your story. On the trial date, you must bring with you any witnesses, checks, bills, papers, photographs or letters that will help you prove your case. If you need a witness to come to court but the witness will not come, ask the Clerk-Magistrate to issue a summons to the person. You may need an expert witness to prove any matter not within common experience. The laws governing small claims are the same as those for major lawsuits, except that simplified procedures are used. The plaintiff must prove that the claim is one which the law recognizes and that the defendant is liable, or the judge will enter a decision for the defendant.

15. **WHAT WILL HAPPEN ON THE DAY OF THE TRIAL?**
    Be sure to arrive on time. If your case is not resolved by a mediator, a trial will be held before the judge. The plaintiff will be asked to tell his or her side of the story, then the defendant will tell his or her side. Each will have an opportunity to ask questions of the other side and the other side's witnesses. To prevail, the law requires the plaintiff to prove the validity of his or her claim.

16. **WHAT WILL THE JUDGE DO?**
    The judge will make a decision. Notice of the decision (called a "judgment") will be given or sent to each side.

17. **CAN I APPEAL THE JUDGMENT?**
    If the defendant loses the case, he or she can appeal for a jury trial of any disputed questions of fact before a jury of six persons, but he or she must post a bond, unless waived. If the plaintiff loses, he or she cannot appeal, since he or she chose to bring his or her case in small claims court.

18. **WHAT SHOULD THE PLAINTIFF DO IF THE DEFENDANT FAILS TO PAY A JUDGMENT?**
    The plaintiff must contact the defendant and ask for payment. If the defendant still fails to pay, the plaintiff should inform the Clerk-Magistrate. If the court has made a payment order, the Clerk-Magistrate will give the plaintiff a notice ordering the defendant to appear in court to show cause why he or she should not be held in contempt and be subject to punishment. The plaintiff must arrange to have an officer serve this notice on the defendant. If the court has not made a payment order, the Clerk-Magistrate will inform the plaintiff how to bring the claim before the judge to have a payment order made.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### Docket No.: ____

| | |
|---|---|
| Dan Howard, Pro-Se<br>Plaintiff | COMPLAINT<br>AND JURY DEMAND |
| v. | |
| Defendants | 03 · 11738 RWZ<br>Referred to M.J. LPC |
| Stuart Juckett,<br>National Association of Securities Dealers,<br>Securities and Exchange Commission | |

## INTRODUCTION

1. This is a Civil Action for stalking, Hate Crimes, racketeering, and violation of the U.S. Civil Rights Act brought by the Plaintiff, a licensed securities professional for 20 years. Plaintiff is Hispanic. Documents provided by defendants National Association of Securities ("NASD") and the Securities and Exchange Commission ("SEC") have identified defendant Stuart Juckett ("Juckett") as a stalker and financial con artist. Defendant Juckett continues to use the NASD website to stalk Plaintiff and extort money out of him and his employers. Plaintiff's employer, in a letter dated September 15, 2002 notified plaintiff of Juckett's latest threats and extortion demands. Juckett referred to Howard as a "Spic" to his employer Robert Angle of Acument Securities. The NASD falsified information contained in my CRD file in response to Juckett's threats and extortion demands. The CRD file is a complete work of fiction and contains sanctions and fines with no basis in fact or law. Said sanctions are null and void with no force or effect. The SEC regulates the actions of the NASD. Plaintiff seeks compensatory, liquidated, and punitive damages under the U.S. Civil Rights Act and under the Massachusetts Hate Crimes Civil Rights Statute G.L. c.265, Sec. 37 and Crime of Stalking, G.L. c.265, Sec 43. Also, Massachusetts G.L. C.12, SEC.111, and harassing phone calls, Massachusetts G.L. c.275, Sec 2. Further, plaintiff relies, in part, on Case Law Commonwealth v. Stephens, 25 Mass.App. Ct. 117,123-124 (1987): The Court holds G.L. c.265 applies to hate-motivated harassment. Further, since the securities case was settled for $45,000, with NASD and SEC approval, there is no clear economic motive for the continuing phone calls, harassment, and extortion demands against plaintiff. Defendant NASD "attorney" John D'Amico used an on the record epithet and referred to plaintiff as a ..."f....ng spic. Defendant Juckett threatened a lawsuit against Robert Angle, president of Acument Securities, if "..You don't get rid of the spic Howard.." These are recurring bias indicators and are unfair and unjust. Further, SEC attorney Margaret McFarland filed a document with this honorable court, on June 4,2003 (docket # 02-1939) identifying Plaintiff as a person of "Hispanic background"...implying that the court should render judgment based on plaintiff's race instead of the facts. Enough is enough. **Defendant NASD displayed a figure depicting a lynching scene in their Boston office. The display was a black-faced doll with a rope noose knotted around its**

neck to depict a lynching. The lynching scene was displayed in a conference room where respondents were taken to extract settlements under color of authority. The black-faced doll with a rope knotted around its neck was left next to a box where plaintiff was asked to examine documents relating to his case. Further, Defendant NASD failed to distribute, prepare, or sign a "decision" within the required 60-day deadline mandated by NASD Rules and Procedures. They did not prepare or distribute the decision within the required 60-day deadline, thus irrevocably damaging Plaintiff's employment and earnings prospects. Laches requires that the "decision", rendered December 1,1999, is null and void with no force or effect. This is the source of continuing and ongoing litigation, including this honorable court, with no end or prospect of settlement. Plaintiff will accept nothing less than the complete deletion of the false and fabricated CRD file. Further, the NASD and SEC settled the case, without my knowledge or consent, for $45,000 in December, 1996.......and then stuck the bill to U.S. taxpayers. NASD regional attorney Max Mahoney closed the file on this entire matter in September 1997. The NASD and SEC was notified about Juckett's stalking and failed to respond. There can be no other reason except racial hatred for the continued stalking of plaintiff with the aid of the NASD and SEC websites. The SEC, without reading the case, simply ratified the NASD's racial and selective prosecution of Plaintiff. Plaintiff demands that his entire CRD (Central Repository Record) be deleted forthwith.

II

## Jurisdiction and venue

2. The plaintiff is a resident of Massachusetts. A majority of the unlawful Hate Crime, privacy, and Civil Rights violations took place in Massachusetts. With regards to Diversity, the defendants are located outside the state of Massachusetts.

3. The plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. ss 1367 and the Supplemental (pendent) jurisdiction of this Court to hear and decide his claims arising under state law.

III

## Parties

4. The Plaintiff resides in Somerville, County of Middlesex, Commonwealth Massachusetts and is a citizen of the United States.
5. The defendant Juckett is a resident of Virginia. Defendant NASD is a self-regulatory organization located in Washington, D.C. The SEC is a government agency located in Washington, D.C. The SEC regulates the NASD and is responsible for their policies, Procedures.

IV

## COUNTS OF THE COMPLAINT

5. Juckett provided his name and address to the NASD website and was then granted access to my personal information. Therefore his stalking and extortion demands were facilitated by the NASD and SEC.

6. Defendant Juckett, utilizing the website maintained by the NASD, tracked plaintiff to one of his employers, Acument Securities. On September 15,2002, Acument securities notified plaintiff in writing about Juckett's extortion demands. The letter from Acument referred to the NASD website and the "calls from the NASD" regarding the extortion demands. Plaintiff is not sure of the

relationship between Juckett and the NASD. U.S. taxpayers are being billed for the SEC, NASD, and Juckett stalking activities.

5. Defendant Juckett is not, and never was, a client of plaintiff. Please find attached copies of a letter from Attorney Gary Schultz, dated February 28, 1997, to Juckett demanding an end to the harassment. **It is listed as NASDR Exhibit 002321**. Enough is enough after 6 years of phone calls from an NASD and SEC profiled stalker and extortionist. The NASD therefore was warned and should have foreseen the consequences of allowing a known stalker and extortionist access to the NASD website. Please find attached the signed investigation of NASD and SEC employee James Nestor and his finding concerning Juckett's extortion, blackmail, bank fraud, and stalking.

6. NASD hired James Nestor, Boston with the approval of the SEC. Please find attached proof of his employment with the NASD. U.S. taxpayers funded his hiring from H.J. Meyers.....a firm shut by Massachusetts State Regulators. **NASDR EXHIBITS 000657 and 000659.**

7. SEC and NASD provided plaintiff with documents which reveal they were informed and aware of Jucketts extortion activities. Therefore, they should have foreseen the problem with not screening Juckett from their websites. **SEE ATTACHED NASDR EXHIBIT 000651 and 000654.**

8. SEC document B-10275 aknowledges racial stalking and extortion of Plaintiff by Juckett. **SEE ATTACHED B-10275**

9. NASD and SEC provide plaintiff with checks forged by Juckett. Said checks were used in an attempt by Juckett to extort money from MBNA bank. **NASDR EXHIBIT 000699.**

10. This represents an irrevocable conflict of interest in that the NASD and SEC, believe it or not, hired the very person who found Juckett guilty of extort, signed the order tickets in question...and then stuck the investigation costs, racial and selective prosecution of Plaintiff on the backs of U.S. taxpayers.

11. Defendants seek to twist the Federal Securities Laws into no cost speculator's insurance in order to extort from Plaintiff, a Hispanic securities professional, the $45,000 paid to Juckett with SEC approval.......and stick the bill to U.S. taxpayers. This hate crime motivataed extortion, on a case **settled in 1997 for $45,000,** is ongoing, pursuant to Plaintiff's letter from employer Acument Securities dated September 15,2002 and subsequent phone conversations with Robert Angle, president of Acument Securities.

9. NASD employee Jim Nestor conducted an investigation of Juckett and itemized Juckett's bizarre stalking activities and financial irregularities. Jim Nestor was hired by the Boston office of NASD with the approval of the SEC. He was hired, in part based on his investigative findings of Juckett. The NASD and SEC later terminated him after he refused to alter his findings of Juckett as a stalker and extortionist. His salary was billed to U.S. taxpayers. Mr. Nestor was hired from H.J. Meyers...a firm shut by Massachusetts Securities Regulators. The SEC and NASD was busy hiring the people from the same brokerage firms they were supposed to regulate... and soaked U.S. taxpayers with the bill.

10. The SEC provided plaintiff with a copy of the Boston Police Record of Juckett's stalking activities. Please see attached **(NASDR EXHIBIT 001496).**

11. Juckett was paid $45,000 by brokerage firm H.J. Meyers, with the approval of the NASD and SEC, to settle a securities related matter with brokerage firm H.J. Meyers of Boston, Massachusetts. Plaintiff was not a party to said settlement.
The NASD website lists the settlement of $45,000.

Plaintiff respectfully notifies this honorable court that he will hold a news conferece on October 2nd to announce this lawsuit and distribute copies of said complaint to the news media.

WHEREFORE, the plaintiff requests that this honorable Court advance this case on the docket for a speedy trial and upon such trial to:

1. Order the arrest and imprisonment of defendant Juckett to the full extent allowed by G.L. c.265, SEC 43.
2. Order defendants to pay compensatory and punitive damages in the amount of $12,000,000 to plaintiff.
3. Order the defendant NASD to close their website until such time as they can secure said site against stalkers and extortionists such as Juckett.
4. Order declaring the false, fabricated ,racially motivated, sanctions and fines against plaintiff null and void.
5. Bar the SEC from enforcing said false,fabricated,and racially motivated fines and sanctions against plaintiff.
6. Order the NASD to delete from my CRD file the incredibly false,fabricated,and racially motivated sanctions. They are null and void with no force or effect.
7. Order the NASD to post this lawsuit, in its entirety, with all exhibits related to Juckett, under my CRD 1112346 and on the NASD website.
8. Order the NASD and SEC to block Juckett from accessing their websites and my CRD file.
9. Order the defendants to pay prejudgment interest; and
10. Order such further relief to make the plaintiff whole, as the Court deems just.

The Plaintiff, does herewith reiterate and restate the statements and allegations set forth in paragraphs one (1) through fifteen (11) of this Complaint, and do hereby incorporate said paragraphs by reference, as if same were specifically, separately and fully set forth herein.

The Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. ss 1367 and the pendant jurisdiction of this Court to hear and decide his claims arising under state law.

By the above conduct the defendants, discriminated against plaintiff based on his Hispanic origin and facilitated Juckett's access to the website to continue his stalking and extortion against plaintiff and his

employers. Therefore, defendants SEC and NASD also engaged in racketeering whereby they sought, and still seek, to extract a refund, through fines, of the $45,000 settlement with Juckett. Members of the "preferrd ethnic group" (i.e. white ) were not pursued by the NASD, SEC, and Juckett, as evidence by their own exhibits and documents provided to plaintiff.

This violation was committed with knowledge, or reason to know, that such act or conduct violated G.L. c.265, SEC 43.

V

JURY DEMAND

The plaintiff demands a trial by jury on each and every triable issue.

Respectfully submitted

Dan Howard, Pro-SE

Dan Howard

PMB 299

One Kendall Square

Cambridge, Massachusetts 02139

617-529-8886

I hereby affirm that a true and correct copy of this document and exhibits were mailed by certified or expedited overnight mail service and or will be provided provided to a process server this 12th day of September, 2003 for delivery to defendants Stuart Juckett, National Association of Securities Dealers (NASD), and Securities and Exchange Commission at their last know addresses:

National Association of Securities Dealers

Office of the General Counsel

1735 K Street

Washington, D.C. 20006-1516

202-728-8294

Securities and Exchange Commission

Office of the General Counsel

450 5th Street NW
Washington, D.C. 20549-0001
202-942-0944

Stuart Juckett
9494 Oak Falls Court
Great Falls, Virginia 22066