# United States District Court
# District of Massachusetts

DAN HOWARD,
      Plaintiff,

    V.                         CIVIL ACTION NO. 04-11900-NG

HD VEST FINANCIAL SERVICES,
STUART K. JUCKETT,
NATIONAL ASSOCIATION OF
      SECURITIES DEALERS,
         Defendants.

## REPORT AND RECOMMENDATION ON DEFENDANT HD VEST FINANCIAL SERVICES'S MOTION TO DISMISS (#2)

COLLINGS, U.S.M.J.

### I. Introduction

The Plaintiff, Dan Howard ("Howard" or "Plaintiff" ), filed a pro-se complaint against HD Vest Financial Services ("HD Vest"), Stuart K. Juckett ("Juckett"), and National Association of Securities Dealers ("NASD") on August 31, 2004. Three claims are alleged in the complaint: Count One for breach of contract, Count Two for securities fraud, and Count Three for stalking. In the introductory paragraph of the complaint, Howard avers that he is asserting a claim for violation of Mass. Gen. L. c. 110A, the Massachusetts Uniform Securities Act, and 950 C.M.R. 10.00 *et. seq.* against HD Vest.

HD Vest has filed a Motion to Dismiss (#2), pursuant to Federal Rules of Civil Procedure Rule 12(b)(1), lack of federal subject matter jurisdiction, and 12(b)(6), failure to state a claim upon which relief can be granted, along with a Memorandum of Points and Authorities in Support of HD Vest Financial Services's Motion to Dismiss (#3).  In response, the Plaintiff has filed a Notice of Plaintiff's Opposition to Defendant HD Vest Financial Services ("HDVFS"[1]) Motion to Dismiss (#23) and a Notice of Plaintiff's Motion and Motion Requesting Continuance of Defendant HD Financial Services ("HDVFS") Motion to Dismiss (#25), which was denied.  Howard has not filed any brief substantively opposing HD Vest's Motion to Dismiss.  At this juncture HD Vest's motion to dismiss is in a posture to be resolved.

## II. The Facts

According to the allegations of the complaint, the Plaintiff, a resident of Massachusetts, is a licensed securities professional and has been since 1983. (#1 ¶¶1, 2, 5)  His CRD[2] number is "1112346." (#1 ¶1)  HD Vest, a broker-dealer registered in Massachusetts, is located in Irving, Texas. (#1 ¶5)  Juckett is an individual who is a resident of New York. (#1 ¶5)  NASD, a self-regulatory organization ("SRO"), is located in Washington, D.C. (#1 ¶5)

The Plaintiff issued a check, #1983 dated 6/30/04, to HD Vest for $344. (#1 ¶8)  On its face the check was noted to be for a "transfer license." (#1 ¶8)  The check was sent to HD Vest's licensing transfer coordinator, Ms. Shae Maden ("Maden"), and ultimately cashed by HD Vest on July 8, 2004.

---

[1]

Howard's acronym for HD Vest is HDVFS.

[2]

Howard explains that "[t]he Central Registration Depository (CRD) is a database maintained by the NASD" which "contains comprehensive information on licensed securities professionals." (#1 ¶7)  NASD also maintains a website that allows the general public access to the CRD. (#1 ¶7)

(#1 ¶¶10, 11)  Ms. Maden's supervisor and HD Vest's New Business Consultant, David Sutton ("Sutton"), "promised and guaranteed to Plaintiff that this payment 'finalized the hiring and license transfer process' of Plaintiff." (#1 ¶11)  Daniel Wright ("Wright"), HD Vest's Compliance Officer, issued a registered representative number, "26528", to Howard. (#1 ¶13)  Maden advised the Plaintiff that he was a registered representative and could place orders through HD Vest. (#1 ¶14)

In a telephone call on August 20, 2004, Sutton informed Howard that his employment and registration with HD Vest was terminated. (#1 ¶20)  According to the Plaintiff, "Wright, Maden and Sutton were running a scheme whereby Registered rep numbers were sold to applicants. The 'application fee' would then be deposited and forfeited upon some fraudulent pretense that the applicant was suddenly not qualified." (#1 ¶15)

In Count Two the Plaintiff adds the allegation that Sutton and Maden issued registered representative numbers to generate profits for HD Vest's parent corporation, Wells Fargo Bank of San Francisco, and "to enhance their own compensation and meet hiring quotas." (#1 ¶27)

With respect to NASD's conduct, the Plaintiff alleges that NASD "fraudently allowed Howard to work at both Brookstone Securities and Acument Securities while allegedly 'suspended for 2 years and fined $25,000.'" (#1 ¶54)  Further, Howard contends that NASD "fraudently altered" Plaintiff's U-4 record[3] as a result of telephone calls from Juckett. (#1 ¶56)  In addition NASD purportedly encouraged Juckett to stalk Plaintiff and did nothing to prevent Juckett from stalking through NASD's website. (#1 ¶¶58, 60) Lastly, the Plaintiff alleges that NASD failed to meet a 60-day deadline for a decision against him and, consequently, that NASD thereby stipulated that any

---

[3]

"A U-4 is a uniform registration form." (#1 ¶54)

3

sanctions noted on his CRD are "Null and Void" and its "enforcement action" was a "sham." (#1 ¶¶63,65)

By way of relief from HD Vest, Howard requests that the Court:

> 1. Order the defendant HDVFS to enforce their contract with Plaintiff and allow Plaintiff to place securities orders for his client.
> 2. Order the defendant HDVFS to refund all monies paid for Plaintiff's license transfer fees plus Federal Express charges and court costs.
> 3. Order the defendant HDVFS to pay punitive damages of $1,500,000 million to Plaintiff.
> 4. Order the revocation of HDVFS's Massachusetts securities license.[4]

### III. Discussion

HD Vest has moved to dismiss the complaint pursuant to Rule 12(b)(1), Fed. R. Civ. P., based on lack of federal subject matter jurisdiction. Because federal courts are considered courts of limited jurisdiction, "federal jurisdiction is never presumed." *Viqueira v. First Bank,* 140 F.3d 12, 16 (1 Cir., 1998). Rather, "'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *Murphy v. United States,* 45 F.3d 520, 522 (1 Cir.), *cert. denied,* 515 U.S. 1144 (1995) (quoting *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 60 (1 Cir.), *cert. denied,* 510 U.S. 823 (1993)).

Once the jurisdictional basis for a claim is challenged under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 446 (1942); *Aversa v. United States,* 99 F.3d 1200, 1209 (1 Cir., 1996); *Murphy,* 45 F.3d at 522. The First Circuit has held that the proponent must clearly indicate the grounds upon which the Court may properly exercise

---

[4]

These paragraphs come from page seven of the complaint in which Howard makes fifteen requests for relief numbers 1-15, respectively. (#1 at p. 7)

jurisdiction over the matter presented:  "'[i]t is black-letter law that jurisdiction must be apparent from the face of the plaintiffs' pleading'." *PCS 2000 LP v. Romulus Telecomms., Inc.,* 148 F.3d 32, 35 (1 Cir., 1998) (quoting *Viqueira,* 140 F.3d at 18).  Hence, if the plaintiff fails to show a basis for either diversity or federal question jurisdiction, the district court must grant the defendant's Rule 12(b)(1) motion.

In ruling on a motion to dismiss for lack of jurisdiction, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa,* 99 F.3d at 1210 *(citing Murphy,* 45 F.3d at 522.)  That is not to say that this leniency eliminates the plaintiff's burden of proving an appropriate jurisdictional basis. Indeed, a plaintiff cannot assert a proper jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.'"  *Murphy,* 45 F.3d at 522 (quoting *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962, 971 (1 Cir., 1993)).

In his complaint Howard alleges that the federal court has subject matter jurisdiction because "with regards to Diversity, the defendants are located outside the state of Massachusetts." (#1 ¶2)[5] However, for the federal court to have subject matter jurisdiction under diversity of citizenship, there must also be at least $75,000 in controversy.  Title 28 U.S.C. §1332(a)(2003).  The First Circuit has held that

> The longstanding test for determining whether a party has met the amount-in-controversy states that:
>> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the

---

[5]

A review of the allegations of the complaint against HD Vest Financial Services Inc. reveals nothing that would  support federal question jurisdiction.

> plaintiff controls if the claim is apparently made in
> good faith. It must appear to a legal certainty that the
> claim is really for less than the jurisdictional amount to
> justify dismissal.

*Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1 Cir., 2004) *quoting St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)(footnotes omitted.); *see also Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1 Cir., 2001).

Turning again to the allegations of the complaint, as damages Howard seeks to be reimbursed by HD Vest "all monies paid for Plaintiff's license fees plus Federal Express charges and court costs." (#1 at p.7 ¶2)  The amount paid for the transfer license is alleged to be $344. (#1 ¶8)  Plainly that figure, coupled with the incidental charges for the delivery service and court costs, falls well short of the required minimal amount in controversy.[6]

It is true that the Plaintiff also requested millions of dollars in punitive damages.  As explained in a leading treatise, "In considering punitive damages to satisfy the jurisdictional minimum in a diversity case, a two-part inquiry is necessary.  The first question is whether punitive damages are recoverable as a matter of governing substantive law." 15 *Moore's Federal Practice* §102.106[3] (Matthew Bender 3d ed.).  In the instant case there is no need to reach the second part of the inquiry because the claims alleged by Howard simply will not support an award of punitive damages as a matter of law.  To be specific, Count One is a claim for breach of contract.  The Massachusetts Supreme Judicial Court has held that

> There are no punitive damages in contract. *See Hall v. Paine*, 224
> Mass. 62, 68, 112 N.E. 153 (1916); 5 A. Corbin, Contracts § 1077
> (1951). Further, "[i]n this Commonwealth there is no such thing
> known to the common law as the recovery of punitive damages in

---

[6]

As an aside, HD Vest notes that the $344 has, in fact, already been refunded to the Plaintiff. (Declaration of A'Nika Pringle #4 ¶8) Howard characterizes that "refund" as "a bribe" to persuade him not to institute this litigation. (Declaration of Dan Howard #26 ¶10)

> addition to compensatory damages." *Boott Mills v. Boston & Me. R.R.*, 218 Mass. 582, 589, 106 N.E. 680 (1914). *See International Fidelity Ins. Co. v. Wilson*, 387 Mass. 841, 856 n. 20, 443 N.E.2d 1308 (1983).

*DeRose v. Putnam Management Company, Inc.*, 398 Mass. 205, 212, 496 N.E.2d 428, 432 (1986).[7]

In Count Two Howard alleges securities fraud under the Massachusetts Uniform Securities Act. The SJC has recently analyzed this act in some detail, writing, *inter alia*,

> Finally, the act limits the buyer's remedy to recision (returning buyer to status quo). *See* G.L. c. 110A, 410(a)(2)("Damages are the amount that would be recoverable upon less the value of the security when the buyer disposed of it and interest at six per cent per year from the date of disposition"). Contract damages are not recoverable, nor are punitive or multiple damages. *Cabot Corp. v. Baddour*, 394 Mass. 720, 724, 477 N.E.2d 399 (1985).

*Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 54-55, 809 N.E.2d 1017, 1028 (2004).

The Plaintiff has alleged no other basis upon which an award of punitive damages could be predicated, and none is apparent from the face of the complaint.

Also by way of relief, Howard requests that the court order HD Vest "to enforce their (sic) contract with Plaintiff and allow Plaintiff to place securities orders for his clients". (#1 at p.7 ¶1) This

---

[7]

The contract at issue, i.e., the Registered Representative Agreement, provides in paragraph 20 that it is "governed by and construed in accordance with the laws of the State of Texas." (#4 ¶4 and attached exhibit) For practical purposes, however, it makes no difference since the law of Texas is the same as the law of Massachusetts on this punitive damages question. *See, e.g.*, *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 (Tex.,1995)("That means, as we recently reiterated in *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex., 1993), that '[r]ecovery of punitive damages requires a finding of an independent tort with accompanying actual damages'. A breach of contract alone will not support punitive damages; the existence of an independent tort must be established. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986).").

appears to be a demand for equitable relief, to wit, specific performance; the Plaintiff asks for no monetary award. Similarly, the Plaintiff requests that the court order the revocation of HD Vest's Massachusetts securities license. (#1 at p.7 ¶4) Again, such a request is in the nature of equitable relief which would afford no monetary benefit to Howard.[8]

To summarize, the Plaintiff has failed to allege any legitimate basis in his complaint to support an amount in controversy of $75,000 against HD Vest. Accordingly, the Court lacks diversity jurisdiction and the complaint against HD Vest should be dismissed.

Although not argued by Howard, it appears that supplemental jurisdiction could properly be exercised over the Plaintiff's claims against HD Vest under 28 U.S.C. §1367(a)[9]. *See Rosario Ortega v. Star-Kist Foods, Inc.*, 370 F.3d 124, 131-134 (1 Cir.), *cert. granted,* 125 S.Ct. 314 (2004).[10] The

---

[8]

Only the claims against HD Vest have been considered since the Plaintiff is not permitted to aggregate his claims against all the individual unrelated defendants in order to meet the requisite amount in controversy. *See, e.g., E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*,160 F.3d 925, 933 (2 Cir., 1998) ("Aggregation to achieve diversity jurisdiction is barred when the liability of the defendants is several and not joint. *See Walter*, 147 U.S. at 373, 13 S.Ct. 348; *see also Thomson v. Gaskill*, 315 U.S. 442, 447, 62 S.Ct. 673, 86 L.Ed. 951 (1942) ("Aggregation of plaintiffs' claims cannot be made merely because the claims are derived from a single instrument...."). As a result, each and every severally liable defendant must, in the normal course of things, meet the amount in controversy.")); 15 *Moore's Federal Practice*, §102.108[2](Matthew Bender 3d ed.].

[9]

Title 28 U.S.C. §1367(a) provides:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

[10]

The question presented on *certiorar*i is: " Whether, in a civil diversity action in which the claims of one plaintiff meet the amount-in-controversy threshold, 28 U.S.C. § 1367 authorizes the district courts to exercise

Court, however, in its discretion, declines to do so given that it has been recommended this date that all the federal claims in this case be dismissed. *See Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1 Cir., 1995)("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.")

### IV. Conclusion and Order

For the reasons stated, I RECOMMEND that Defendant HD Vest Financial Services's Motion To Dismiss (#2) be ALLOWED, without prejudice, and that JUDGMENT enter dismissing plaintiff's claims against HD Vest Financial Services without prejudice pursuant to Rule 12(b)(1), Fed. R. Civ. P., for lack of subject matter jurisdiction.[11]

### V. Review by the District Judge

The parties are hereby advised that pursuant to Rule 72, Fed, any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for

---

supplemental jurisdiction over the related claims of additional plaintiffs who do not satisfy the amount-in-controversy requirement?"
*See Rosario Ortega,* 2004 WL 1607383. Thus the reasoning for which the First Circuit's decision is cited herein remains unaffected by the appeal.

[11]

    *See Torres-Fuentes v. Motorambar, Inc.*, 396 F.3d 474, 475-6 (1 Cir., 2005)("Dismissals for lack of jurisdiction should generally be without prejudice. *See, e.g., Mills v. Harmon Law Offices*, 344 F.3d 42, 45-46 (1st Cir.2003)(lack of subject matter jurisdiction precludes district court from disposing of the case on the merits)").

this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

June 2, 2005.

10