# United States District Court
# District of Massachusetts

DAN HOWARD,
       Plaintiff,

       V.                                CIVIL ACTION NO. 04-11900-NG

HD VEST FINANCIAL SERVICES,
STUART K. JUCKETT,
NATIONAL ASSOCIATION OF
      SECURITIES DEALERS,
       Defendants.

## REPORT AND RECOMMENDATION ON MOTION OF DEFENDANT NASD, INC. TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(6) AND 12(h)(3)  (#10)

COLLINGS, U.S.M.J.

*I. Introduction*

       The Plaintiff, Dan Howard ("Howard" or "Plaintiff"), filed a pro-se complaint (#1) against HD Vest Financial Services ("HD Vest"), Stuart K. Juckett ("Juckett"), and National Association of Securities Dealers ("NASD") on August 31, 2004.  Three claims are alleged in the complaint: Count One for breach of contract, Count Two for securities fraud, and Count Three for stalking.  In the introductory paragraph of the complaint, Howard avers that he is asserting a claim for violation of

the Massachusetts Uniform Securities Act as well as a claim for stalking against NASD.[1]

NASD has filed a Motion of Defendant NASD, Inc. to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 12(h)(3) (#10), along with a memorandum of law in support (#11). In response, the Plaintiff has filed a so-called Motion in Opposition (#27)[2] as well as a declaration of Dan Howard (#26). Upon receiving leave of Court, NASD submitted a reply brief (#20) in support of its dispositive motion. At this juncture NASD's motion to dismiss is in a posture to be resolved.

## *II. Facts*

According to the allegations of the complaint, the Plaintiff, a resident of Massachusetts, is a licensed securities professional and has been since 1983. (#1 ¶¶1, 2, 5)  His CRD[3] number is "1112346." (#1 ¶1)  HD Vest, a broker-dealer registered in Massachusetts, is located in Irving, Texas. (#1 ¶5)  Juckett is an individual who is a resident of New York. (#1 ¶5)  NASD, a self-regulatory organization ("SRO"), is located in Washington, D.C. (#1 ¶5)

The Plaintiff issued a check, #1983 dated 6/30/04, to HD Vest for $344. (#1 ¶8)  On its face the check was noted to be for a "transfer license." (#1 ¶8)  The check was sent to HD Vest's licensing transfer coordinator, Ms. Shae Maden ("Maden"), and ultimately cashed by HD Vest on July 8, 2004.

---

[1] Although there are no allegations against NASD in the paragraphs constituting Count Two of the complaint, the Plaintiff does allege separate paragraphs (¶¶53-71) relating to NASD's purported conduct.

[2] In his Motion in Opposition to National Association of Securities Dealers ("NASD") Motion to Dismiss Plaintiff's Complaint (#27), Howard contends that "NASD violated section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 therunder (sic)." (#27 at p. 2) There are no allegations with respect to any such claim in the complaint.

[3] Howard explains that "[t]he Central Registration Depository (CRD) is a database maintained by the NASD" which "contains comprehensive information on licensed securities professionals." (#1 ¶7)  NASD also maintains a website that allows the general public access to the CRD. (#1 ¶7)

(#1 ¶¶10, 11) Ms. Maden's supervisor and HD Vest's New Business Consultant, David Sutton ("Sutton"), "promised and guaranteed to Plaintiff that this payment 'finalized the hiring and license transfer process' of Plaintiff." (#1 ¶11) Daniel Wright ("Wright"), HD Vest's Compliance Officer, issued a registered representative number, "26528", to Howard. (#1 ¶13) Maden advised the Plaintiff that he was a registered representative and could place orders through HD Vest. (#1 ¶14)

In a telephone call on August 20, 2004, Sutton informed Howard that his employment and registration with HD Vest was terminated. (#1 ¶20) According to the Plaintiff, "Wright, Maden and Sutton were running a scheme whereby Registered rep numbers were sold to applicants. The 'application fee' would then be deposited and forfeited upon some fraudulent pretense that the applicant was suddenly not qualified." (#1 ¶15)

With respect to NASD's conduct, the Plaintiff alleges that NASD "fraudently allowed Howard to work at both Brookstone Securities and Acument Securities while allegedly 'suspended for 2 years and fined $25,000.'" (#1 ¶54) Further, Howard contends that NASD "fraudently altered" Plaintiff's U-4 record[4] as a result of telephone calls from Juckett. (#1 ¶56) In addition, NASD purportedly encouraged Juckett to stalk Plaintiff and did nothing to prevent Juckett from stalking through NASD's website. (#1 ¶¶58, 60) Lastly, the Plaintiff alleges that NASD failed to meet a 60-day deadline for a decision against him and, consequently, that NASD thereby stipulated that any sanctions noted on his CRD are "Null and Void" and its "enforcement action" was a "sham." (#1 ¶¶63,65)

By way of relief vis-a-vis NASD, the Plaintiff requests that the Court:

---

[4] "A U-4 is a uniform registration form." (#1 ¶54)

8. Order defendant NASD to block Juckett from accessing its website.
9. Order the NASD website shut forthwith until safeguards are in place to protect individuals and their families from stalkers such as Juckett.
10. Order the NASD to pay Plaintiff $10,000,000 dollars in punitive damages.
11. Order the NASD to include all Plaintiff's exhibits regarding Juckett in Plaintiff's CRD file 1112346.
12. Order the NASD to keep Plaintiff's Securities Licenses valid and in effect until these matters are settled by the Federal Court.[5]

### *III. The Law*

In its memorandum of law, NASD focuses on the argument that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, NASD claims that the complaint should be dismissed for three separate reasons: 1) it is barred by res judicata, 2) there is no private cause of action allowed against NASD for its regulatory acts and omissions under federal law, and 3) NASD is immune from claims arising from NASD's statutory role as a regulator. (#11 at pp. 1-2)

Of course the standard to be applied in deciding this motion has been heralded for decades:

> It is a familiar principle that a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The factual allegations of the complaint are to be accepted as true, and all reasonable inferences that might be drawn from them are indulged in favor of the pleader. *See Kiely v. Raytheon Co.*, 105 F.3d 734, 735 (1st Cir.1997)(per curiam); *Garita Hotel L.P. v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir.1992).

*Gorski v. New Hampshire Dept. of Corrections*, 290 F.3d 466, 473 (1 Cir., 2002).

---

[5] These paragraphs come from page seven of the complaint in which Howard makes fifteen requests for relief numbered 1-15, respectively. (#1 at p. 7)

Equally common is the notion that although the court is usually limited to considering material only within the four corners of the complaint as well as documents attached thereto or incorporated therein when deciding a Rule 12(b)(6) motion, "narrow exceptions [have been made] for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1 Cir., 1993); *accord Mihos v. Swift*, 358 F.3d 91, 99 (1 Cir., 2004).

In this instance NASD has proffered four documents which fall within the purview of these narrow exceptions and so shall be considered in deciding the motion to dismiss. These documents have been certified as true, accurate and complete NASD documents (*see* #12), each is central to Howard's complaint, at least two are public documents and all are in some manner adverted to in the complaint.

The NASD documents provide context to the claims alleged in the complaint. Prior to reaching the merits of the defendant's arguments, a bit more background will help to set the stage. First, the First Circuit has had occasion to examine the nature and role of NASD within the securities statutory scheme at some length:

> The Securities Exchange Act of 1934 and its subsequent amendments create a detailed, comprehensive system of federal regulation of the securities industry. The system's foundation is self-regulation by industry organizations established according to the guidelines of the Maloney Act. The NASD is a national securities association registered with the SEC pursuant to the Maloney Act which provides self-regulation of the over-the-counter securities market. *See* 15 U.S.C. § 78o-3.
>
> The Exchange Act mandates a three-tiered process of both administrative and judicial review of NASD disciplinary proceedings. At the first level, proceedings are conducted by the local DBCC with appeal to, and de novo review by, the NBCC. The Maloney Act

> prescribes an array of procedural safeguards to ensure fairness at this first tier of review. The NASD must "bring specific charges, notify such member or person of, and give him an opportunity to defend against, such charges, and keep a record." 15 U.S.C. § 78o -3(h)(1).
>
> The NASD is authorized to impose a number of sanctions, including censure, fines, suspension, or prohibition from association with member firms. 15 U.S.C. § 78o-3(b)(7); NASD Rules of Fair Practice, Art. V, § 1. In addition to these specific sanctions, the NASD may impose "any other fitting sanction deemed appropriate under the circumstances." *Id.* Sanctions must be supported by written statements specifying the activity that caused the violation, the specific provision or rule violated, and the reason for the sanction imposed.
>
> At the second level, the SEC reviews NBCC final orders de novo. 15 U.S.C. § 78s(d). Once the NBCC files its decision with the SEC, disciplinary respondents have 30 days to petition the SEC for review. 15 U.S.C. § 78s(d)(2). The SEC can affirm or modify any sanction, or remand to the NASD for further proceedings. 15 U.S.C. § 78s(e). The SEC is empowered to seek an injunction in district court if the NASD "is engaged or is about to engage in acts or practices constituting a violation" of the securities laws. 15 U.S.C. § 78u(d). The SEC may "censure or impose limitations upon the activities, functions and operations" of self-regulatory organizations (such as the NASD) that violate the Exchange Act, the rules thereunder, or its own rules. 15 U.S.C. § 78s(h)(1). The SEC may remove any officer or director of a self-regulatory organization from office if he or she is found to have violated the rules or abused his or her position. 15 U.S.C. § 78s(g)(2).
>
> *****
>
> The third tier of the process provides for review of final SEC orders by the United States Courts of Appeals. 15 U.S.C. § 78y(a); *see Mister Discount Stockbrokers, Inc. v. SEC*, 768 F.2d 875, 876 (7th Cir.1985) (stating that "final orders of the Commission are reviewable only in the United States Courts of Appeals"). Congress believed that this three-tiered process founded upon self-regulation would garner several benefits, including "the expertise and intimate familiarity with complex securities operations which members of the industry can bring to bear on regulatory problems, and the informality and flexibility of self-regulatory procedures." S.Doc. No. 93-13, 93rd Cong., 1st Sess. 149 (1973).

*Swirsky v. National Ass'n of Securities Dealers*, 124 F.3d 59, 61-2 (1 Cir., 1997).

### *IV. Proceedings Before the NASD Re: Plaintiff*

In 1999, Howard was the subject of disciplinary proceedings when the Department of Enforcement brought a complaint against him for violation of NASD Conduct Rules for "recommending purchases and sales of speculative securities to customer JM, without having reasonable grounds for believing that the transactions were suitable for the customer" and "filing inaccurate Form U-4s." (#12, Exh. A) The Hearing Panel found that Howard had violated the NASD Conduct Rules and, consequently, fined him $25,000 and suspended him for 180 days. (#12, Exh. A) Howard appealed the Hearing Panel decision to the National Adjudicatory Council. (#12, Exh. B) The Council issued its decision on November 16, 2000, upholding the findings that Howard had violated the NASD Conduct Rules but increasing the sanctions imposed to a two-year suspension (and a 90-day suspension to run concurrently) and a total $25,000 fine. (#12, Exh. B)

Howard again appealed, this time to next tier, the SEC. *In The Matter Of The Application Of Daniel Richard Howard*, Adm. Proc. File No. 3-10392, SEC Rel. No. 34-46249,(July 26, 2002), 2002 SEC Lexis 1909. The SEC sustained the disciplinary action taken by NASD. *In re Howard,* 2002 SEC Lexis 1909*24. Howard then filed a petition for review to the First Circuit Court of Appeals. *Howard v. Securities and Exchange Commission*, 77 Fed. Apprx. 2, 2003 WL 22162370 (1 Cir. Sept. 19, 2003). That petition was denied. *Howard*, 77 Fed. Apprx. 2, 2003 WL 22162370.

It is in light of these prior proceedings that NASD argues that several of Howard's claims are barred by the principle of res judicata.

### *V. Discussion*

### **A. Res Judicata**

The defense of res judicata has been delineated by the First Circuit in the following manner:

> Where, as here, both the potentially precluding suit and the potentially precluded suit were litigated in federal courts, federal law governs the res judicata effect of the prior judgment. *See Gonzalez v. Banco Central Corp.*, 27 F.3d 751, 755 (1st Cir.1994). The elements of federal res judicata are "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." *Id*.

*Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 37 (1 Cir., 1998); *see also In re Iannochino*, 242 F.3d 36, 43-9 (1 Cir., 2001).

Basically the two causes of action at issue are analyzed to determine whether they "arise out of a common nucleus of operative facts." *Massachusetts School of Law,* 142 F.3d at 38 (citation omitted). Res judicata applies to decisions of administrative agencies when they are acting in a judicial capacity. *Aunyx Corp. v. Canon U.S.A. Inc.,* 978 F.2d 3, 7 (1 Cir., 1992), *cert. denied,* 507 U.S. 973 (1993).

There can be no doubt but that there is "sufficient identicality between the parties in the two suits." In the previous proceedings NASD pursued disciplinary charges against Howard. Here, Howard is suing NASD among others.

As noted earlier, on July 26, 2002 the SEC affirmed the NASD's earlier decision against Howard. *In re Howard,* 2002 SEC Lexis 1909. The SEC agreed, "[a]s the NASD found, Howard engaged in egregious misconduct. He betrayed the trust of an elderly customer in order to profit at the customer's expense. He also provided false information on his Form U-4 and blamed a firm employee for his own misstatement." *In re Howard,* 2002 SEC Lexis 1909*23-4. In that opinion the SEC specifically addressed several of the issues raised by Howard in the complaint in the instant case.

In ¶63 of the complaint, Howard alleges that the NASD decision is "null and void" because it was not prepared before the 60-day deadline. In its opinion the SEC concluded that "[a]s the NASD point out, the rule [Rule 9268] addresses the timing of the Hearing Officer's *preparation* of a decision

(which must then be distributed to other members of the Hearing Panel), and not the *issuance* of the decision." *In re Howard,* 2002 SEC Lexis 1909*12-3 (emphasis added).

In ¶65 of the complaint the Plaintiff alleges that NASD stipulates, via "Laches," that the "enforcement action" was a "sham." Again, this issue was addressed by the SEC: "for Howard to succeed on a claim of laches, he must show both a lack of diligence by the NASD and prejudice resulting from the NASD's delay. No such showing has been made here." *In re Howard,* 2002 SEC Lexis 1909*13-4 (footnote omitted).

Howard alleges in ¶61 of his complaint that NASD altered his U-4 to delete a racial slur. The SEC found that "the record contains no evidence of any racial or religious slur, and the NASD attorney denied making any such comment." *In re Howard,* 2002 SEC Lexis 1909*15-6.

On September 19, 2003, the First Circuit determined that the SEC's decision was supported by substantial evidence and that the Plaintiff failed to establish selective prosecution. *Howard v. Securities and Exchange Commission*, 77 Fed. Apprx. 2, 2003 WL 22162370 (1 Cir.). The decision by the First Circuit is plainly a final judgment on the issues raised.

The allegations advanced by the Plaintiff in ¶¶61, 63, 65 of the complaint arise from the same set of operative facts as those already litigated before the SEC. Relitigation of those claims in this forum is barred by res judicata.[6]

### B. No Private Cause of Action

The only allegations that remain are Howard's assertions that NASD is liable for Juckett's

---

[6] The allegations in ¶¶54 and 64 of the complaint that NASD "fraudulently allowed Howard to work at both Brookstone Securities and Acument Securities while allegedly 'suspended for 2 years and fined $25,000'" is simply wrong as a matter of law. The sanctions imposed by the Council were stayed while his appeal was pending before the SEC (NASD Rule 9370) and thus were not in effect during the periods he was employed by Brookstone Securities and Acument Securities. (*See* #11 at 6 n.2)

purported stalking by encouraging it and failing to prevent it. (#1 ¶¶58,60)  NASD argues that there is no private cause of action for claims arising from NASD's role as a regulator and, further, that NASD is absolutely immune from any cause of action brought regarding its regulatory function.

Once again some background is helpful:

> The NASD is mandated by statute to regulate the over-the-counter securities market, as well as the securities firms and their registered representatives who buy and sell over-the-counter securities. All of its procedures and standards must be approved by the SEC which has the authority to sanction any registrant whose activities, functions or operations directly or indirectly violate the Securities Exchange Act, 15 U.S.C. §§ 78a, *et. seq.* As a part of its statutory mandate, the NASD (1) is required to maintain records of its member securities firms and their registered representatives, including the data relating to the employment and termination of registered representatives, for at least five years, and (2) established standards for the uniform licensing and registration of securities professionals and, in so doing, it utilizes two forms in this process. One form, U-4 ("Uniform Application for Securities Industry Registration and Transfer"), must be filed whenever a registered representative or some other related professional becomes an employee of a securities firm. Another form, U-5 ("Uniform Notice of Termination of Securities Industry Registration"), must be completed by a securities firm upon the termination of a registrant's employment.
>
> The information on these forms is maintained in the "Central Registration Depository (CRD)" for federal and state regulatory authorities and, to a limited extent, the investing public. The CRD, a computer database that was developed by the NASD and all of the state security commissions, contains current registration information, as well as a record of the regulatory and enforcement actions, relating to personnel within the securities industry personnel.
>
> The Securities Exchange Act (1) requires the NASD to make certain CRD information available to the general public, and (2) immunizes the NASD from liability for its good faith disclosure of this information. The CRD agreement obligates the NASD to maintain the original U-4 and U-5 forms in hard copy and on microfilm.

*Meyers v. National Ass'n of Securities Dealers, Inc.*, 1996 WL 1742619, *1 (E.D.Mich.)(footnotes

omitted).

NASD's Public Disclosure Program ("PDP") which "discloses to the public certain information regarding employment history, other business experience, and disciplinary history of NASD members and associated persons" has been approved by the SEC. SEC Release No. 34-42402, 65 F.R. 7582 (February 15, 2000). The SEC noted that "[o]ne of the primary purposes of the PDP is to help investors make informed choices about the individuals and firms with whom they may wish to do business." SEC Release No. 34-42402, 65 F.R. 7582 (February 15, 2000).

From all that appears, the Plaintiff's stalking claim is based solely upon NASD's disclosure of Howard's registration information through its PDP. However, in operating and maintaining its website on which this information is disseminated, NASD is acting in its regulatory capacity. Indeed, this disclosure is mandated under the Exchange Act.

Courts have held that no private right of action exists against NASD, or other SROs, under the Exchange Act. *See, e.g., Desiderio v. NASD, Inc.*, 191 F.3d 198, 207-8 (2 Cir., 1999), *cert. denied,* 531 U.S. 1069 (2001); *Feins v. American Stock Exchange, Inc.*, 81 F.3d 1215, 1221 (2 Cir., 1996)("The overall structure of the statute provides additional evidence that Congress did not intend to provide a private cause of action in federal court."); *Meyers,* 1996 WL 1742619*4 ("[A] majority of courts have held that there is no private cause of action against the NASD for a violation of its own rules."); *Gustafson v. Strangis*, 572 F. Supp. 1154, 1158 (D. Minn., 1983)("The court is in agreement with the reasoning of those cases that have found Congress did not intend to create implied private causes of action for violations of NASD rules. Section 15A does not by its terms indicate a legislative intent to create a private remedy and there is simply no hint of such intent in the legislative history....The statutory scheme, which provides for NASD discipline of its members and pervasive

oversight of the NASD by the SEC, also suggests that Congress intended these means to be the exclusive means of enforcement." (citations omitted))  That Howard's claims may be framed in terms of state law does not alter that conclusion.  *See D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 101-4 (2 Cir.), *cert. denied*, 534 U.S. 1066 (2001); *Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1215 (9 Cir., 1998)(" A rule permitting recovery under such a theory would allow states to define by common law the regulatory duties of a self-regulatory organization, a result which cannot co-exist with the Congressional scheme of delegated regulatory authority under the Exchange Act."); *Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49, 59 (2 Cir., 1996) ("Furthermore, allowing suits against the Exchange arising out of the Exchange's disciplinary functions would clearly 'stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' namely, to encourage forceful self-regulation of the securities industry.  Other courts have relied upon this rationale in holding that state law claims against self-regulatory organizations are preempted by the Exchange Act."(citations omitted)).

### C. NASD Immunity

Courts have also held that "[c]onsistent with their role in regulation of the securities market, self-regulatory organizations have been granted immunity from suit when acting in a quasi-governmental capacity." *Sparta*, 159 F.3d at 1214; *see also Partnership Exchange Securities Company v. National Association Of Securities Dealers, Inc.*, 169 F.3d 606, 608 (9 Cir., 1999).  The Second Circuit has interpreted this immunity broadly:

> The NYSE, as a SRO, stands in the shoes of the SEC in interpreting the securities laws for its members and in monitoring compliance with those laws. It follows that the NYSE should be entitled to the same immunity enjoyed by the SEC when it is performing functions delegated to it under the SEC's broad oversight

> authority. *See Sparta Surgical Corp*., 159 F.3d at 1213 ("Extending immunity when a self-regulatory organization is exercising quasi-governmental powers is consistent with the structure of the securities market as constructed by Congress."); *Austin Mun. Sec.*, 757 F.2d at 690-91 ("[The] NASD disciplinary officers serve as surrogates for the SEC, and should receive the same immunity their principles [sic] possess."); *D'Alessio*, 125 F. Supp.2d at 658 (holding that according the NYSE absolute immunity when it performs regulatory functions that would otherwise be performed by the SEC "is a matter not simply of logic but of intense practicality, since, in the absence of such immunity, the [NYSE's] exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits").

*D'Alessio*, 258 F.3d at 105; *see also Barbara*, 99 F.3d 57-8.

Because Howard's stalking claims arise out of NASD's performance of its regulatory function in operating and maintaining the CDR, NASD is entitled to absolute immunity from those claims.

## VI. Conclusion and Recommendation

For the reasons stated, I RECOMMEND that (1) the Motion of Defendant NASD, Inc. To Dismiss Complaint Pursuant To Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 12(h)(3)(#10) be ALLOWED on the grounds that the complaint fails to state a claim upon which relief can be granted and that (2) JUDGMENT enter dismissing plaintiff's claims against NASD, Inc. pursuant to Rule 12(b)(6), Fed. R. Civ. P.

## VII. Review by the District Judge

The parties are hereby advised that pursuant to Rule 72, Fed . R. Civ. P., any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for

this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

June 2, 2005.